## BLACKWOOD *v.* LIEBKE.

### Opinion delivered October 26, 1908.

1. CONTRACTS—LIQUIDATED DAMAGES.—Where a contract for the cutting of timber from certain lands provided that all of the merchantable timber should be cut clean, and that if this was not done the second party should pay the first party one dollar per tree, the amount so fixed will be treated as liquidated damages, and not a penalty, and will be enforced. (Page 551.)

2. SAME—LIQUIDATED DAMAGES—TEST.—In determining whether a stipulation for fixed damages on breach of a contract shall be treated as a penalty or as liquidated damages, one test is whether the damages were difficult of ascertainment; and this question is to be deter-

mined from a consideration of the status of the parties at the time the contract was entered into, and not at the time it was broken. (Page 553.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* judge; reversed in part.

STATEMENT BY THE COURT.

This suit grew out of the following contract:

"This agreement made this 7th day of August, 1905, between G. T. Blackwood, party of the first part, and C. F. Leibke, party of the second part, witnesseth:

"First party hereby grants, bargains and sells to second party all the merchantable ash timber standing on first party's land in State and county aforesaid in consideration of the sum of three dollars and fifty cents ($3.50) per thousand feet, and in further consideration of said sum grants to second party right of ingress to and egress from said land for the purpose of cutting, hauling and removing said timber. First party hereby acknowledges receipt from second party of an advance cash payment of three hundred dollars ($300); the first timber taken by second party shall be applied to said advance until same is balanced, after which payments shall be made as hereinafter specified. Second party hereby agrees to cut, haul and remove said timber and to pay for same within the time and in the manner hereinafter specified. It is understood between the parties hereto that the term "merchantable timber" means all ash timber measuring fourteen inches in diameter at small end twelve feet above the stump. It is further agreed between the parties hereto that second party shall cut and haul the timber from said land without unnecessary delay; that said timber shall be dumped on the banks of Mound Lake or Arkansas River, as may be most convenient to haul; that when so dumped said logs shall be scaled by both parties; that in making said scale said logs shall be measured from bark to bark at small end; that the footage to be paid for by second party shall be thus ascertained; that all logs cut during the month shall be thus scaled at the end of the month; that as soon as the scale is completed and quantity thus ascertained second party shall pay first party for same. Second party agrees to cut said timber clean as he goes over the land,

not leaving isolated merchantable trees thereon; if upon the termination of this agreement by limitation any merchantable trees are left standing on land, second party shall pay first party therefor the sum of one dollar per tree; if any timber has been cut but not hauled to river or lake bank, same shall be scaled, as above provided, and paid for by second party at the rate of three and a half dollars per thousand feet. It is further understood and agreed between the parties hereto that second party's rights hereunder cease and determine on the first day of January, 1907, on which date second party shall quit said land and leave all timber standing thereon, but second party may have right of ingress for a period of 200 days after said 1st of January, 1907, for the purpose of removing such logs as have been cut, scaled, paid for, but no other purpose.

"In token of the assent of the parties hereunto witness their signature in duplicate, this day and date above written.

"G. T. BLACKWOOD,

"C. F. LIEBKE,

"By W. C. KIRK, Agent."

Blackwood filed suit against Liebke in the Phillips Circuit Court on August 30, 1907, in which he alleged the execution of the foregoing contract; that the same expired by limitation on the 21st day of July, 1907; that the defendant had failed to comply with the contract in that on the first day of January, 1907, there were left standing on the land covered by the contract 1,339 merchantable ash trees, of the value of $1,339, for which he had not paid $1 per tree, and prayed judgment for said sum.

He also alleged a violation of the contract in that defendant had cut certain timber which he had failed and refused to scale and pay for as required by the terms of the contract, and prayed judgment for $350 on that account.

Defendant in his answer admitted the execution of the contract, but denied that the number of feet of timber alleged was cut and unpaid for, but admitted that a small amount of timber had been cut and left in the woods, owing to weather conditions, for which he was ready to pay. He denied liability for the value of the trees left standing, asserting that the provision of the contract in reference to payment therefor is penal, and that plaintiff is not entitled to recover according to its terms; and that

plaintiff had suffered no damages on this account, as the value of standing timber had greatly enhanced since the execution of the contract.

While there is no acreage mentioned in the contract, the evidence shows that Mr. Blackwood's tract was about 2,800 acres, but does not show the extent of the cutting. Evidence was adduced to prove the amount of timber which had been cut, remaining on the ground at the termination of the contract, and the value thereof. As there is no longer any controversy over that issue, the facts in regard thereto are unimportant on this appeal.

There was testimony tending to prove that there was 1,339 ash trees left standing upon the land of the size and quality called for as merchantable in the contract. There was testimony to prove that the value of the timber in said trees left standing was $1.50 per thousand feet more than it was at the time of the execution of the contract. The following occurs in the testimony of one of defendant's witnesses, and is all the testimony upon the subject:

"Q. If you find a tract of timber, or land which is well covered with timber, and lying by the side of it there is a tract which is sparsely covered with the same kind of timber, is there not a difference in the market value of the timber on the two tracts?

"A. I would not think there would be, if the sizes would run the same.

"Q. If you were to find 160-acre tract of timber which would run 2,500 feet of ash timber to the acre, would you not pay more per thousand feet for that timber than you would on another 160-acre tract which would only run about 500 feet per acre?

"A. I would pay a little more, for the reason that it could be logged cheaper.

"Q. After a tract of timbered land has been cut over and a large percentage of the merchantable ash timber cut therefrom, is not the remaining timber much depreciated in value by reason of the fact of its sparsity?

"A. It would, if it was cut all over.

"Q. Say, for instance, that sixty per cent. of the timber

had been removed, would it not be a very difficult matter to obtain as great a price for the remaining 40 per cent., as for the original tract as an entirety?

"A. You might take a part of the land and cut on that and not all over it, and that would not hurt it, but you might cut on the low land and leave the high land. That would be all right; or you could cut on the low and leave the high; that would not affect it.

"Q. Then, if it was pretty freely culled over in all parts, such isolated trees that were left would command a very low market value in comparison with what that originally had?

"A. About the only difference would be in the cost of logging. It depends a good deal on the character of the timber.

"Q. Is it not almost impossible to induce a lumber man to buy standing timber on land which has been pretty well culled over?

"A. Well, it depends on how bad he wants it."

The court refused to give the following instruction: "If you find from the evidence that on or after January 1, 1907, there were standing on plaintiff's land ash trees measuring fourteen inches in diameter at small end twelve feet above the stump, you will find from the evidence the number of such trees, and return a verdict for the plaintiff therefor at the rate of $1 per tree." The court instructed the jury on that issue as follows: "The jury are instructed that, for the breach of the contract by the defendant in not cutting the trees mentioned in the contract, the plaintiff is entitled to recover only nominal damages." The jury returned the following verdict: "We, the jury, find for the plaintiff to the amount of $210 for sixty thousand feet of timber cut and not hauled, and also find $1 damages for failure of defendant to comply with the contract." Judgment was accordingly entered for the plaintiff for $211. Plaintiff filed a motion for new trial, which was overruled, and exceptions were saved, and he has appealed.

*F. M. Rogers,* for appellant.

The contract sued on is one for liquidated damages.

(1) When the amount stipulated is grossly in excess of the actual damages sustained, it is a penalty. 14 Ark. 331; 55

Ark. 376.  (2)  When a contract providing for several distinct acts stipulates payment of a gross sum for a breach, such sum is held to be a penalty.  73 Ark. 432.  (3)  When the actual damage is uncertain and difficult of ascertainment, the stipulated amount is liquidated damages.  (4)  If the language of the parties evinces a clear intention to fix the sum to be paid in case of a breach, the damage is liquidated.  (5)  The intention of the parties, as ascertained from the contract, is to be enforced. 14 Ark. 315; 54 Ark. 340; 56 Ark. 405; 57 Ark. 168; 59 Ark. 366; 69 Ark. 114; 183 U. S. 642.

*John I. Moore,* for appellee.

1.  Since no exception was saved in reference to the count for damages for timber cut and not removed, the judgment on that count should be affirmed.

2.  That this is an action for a penalty is shown by the contract itself.  The amount stipulated is grossly in excess of any actual damages that could be sustained by reason of a failure by appellee to cut and remove the timber.  If appellant could have sustained any damage, the amount thereof, under any state of the case, could easily have been ascertained.  There must be some substantial breach of the contract, resulting in more than mere nominal damages to the other party, before liability to pay liquidated damages can attach to the party in default.  43 N. W. 956.  If the damages are capable of being known and ascertained, the sum fixed upon as damages will be treated as a penalty, although declared to be intended as liquidated damages.  39 Barb. (N. Y.) 634; 5 Cow. (N. Y.) 144, and note; 38 Ark. 557; 55 Ark. 376; 73 Ark. 432; 44 Ga. 507; 16 Ill. 400; 27 Kan. 677; 12 Bush 249.  If the agreement be unconscionable, the court will not be bound by its terms as to the rule of damages.  12 Mass. 365; 53 N. Y. 394.  Where the amount stipulated in the bond violates the fundamental law of compensation, it will be treated as a penalty, without reference to the name given it by the parties.  55 Ill. App. 353.  The law preferably regards a sum stated to be payable, if a contract is not fulfilled, as a penalty, and not as liquidated damages.  By treating such sum as a penalty, the recovery can be apportioned to the actual damages or loss actually sustained.  28 Ala. 425; 6 Blackf. 206;

4 Ia. 1; 15 Me. 273; 13 Allen (Mass.) 19; 3 How. (Miss.) 398; 8 Mo. 467; 35 N. J. L. 149; 17 Barb. (N. Y.) 260; 12 Phila. 366; 1 McMull. (S. C.) 106; 6 Humph. (Tenn.) 186.

HILL, C. J., (after stating the facts.) The sole question presented on this appeal is whether the stipulation in the contract for the payment of $1 per tree for all the merchantable trees, of the dimensions mentioned in the contract, is a penalty or whether it is stipulated damages. The circuit court held it was a penalty, and the plaintiff (appellant here) contends that it was stipulated damages.

A learned discussion as to when agreements in contracts will be treated as stipulated damages and when as penalties, by Mr. Chief Justice WATKINS, may be found in the case of *Williams v. Green*, 14 Ark. 315. Summing up the matter, he says: "Our impression is that wherever the act to be done or abstained from is other than the payment of money, the circumstance that the actual damages may be more or less easily susceptible of ascertainment ought not to influence the construction of an agreement to be one way or the other, a stipulation for damages or merely by way of penalty. Where the damages are at all uncertain or unliquidated, the parties ought to be allowed to anticipate and stipulate them if they choose to do so. Whenever courts attempt to take a distinction among contracts of this class, where no uniform or intelligible rule can be laid down to govern the distinction, they not only assume a most vexatious jurisdiction to reform the contracts of weak or sanguine men, but it tends to impair the confidence which all men ought to have in the obligation of contracts." In *Lincoln v. Little Rock Granite Co.*, 56 Ark. 405, this statement was quoted from and approved.

In *Nilson v. Jonesboro*, 57 Ark. 168, the court said: "The authorities, however, show that where the intention to liquidate the damages is not obvious, the stipulated sum will usually be given the effect of a penalty if it exceeds the measure of a just compensation and the actual damage sustained is capable of proof. (Citing authorities.) But where the contract is of such a nature that the damage caused by its breach would be uncertain and difficult of proof, the sum named by the parties is generally held to be liquidated damages, if the form and lan-

guage of the instrument are not unfavorable to that construction, and the magnitude of the sum does not forbid it."

In *Stillwell* v. *Paepcke-Leicht Lumber Co.,* 73 Ark. 432, the court said: "Usually, the surest test of liquidated damages is where the actual damages caused by the breach would be uncertain and difficult of proof, and the sum stipulated appears to be reasonable compensation for the injury occasioned by the failure to perform the contract."

A learned writer on the subject, after discussing the difficulties in applying the principles involved, says: "Notwithstanding the deplorable state of the decisions, it may be assumed, first, that if, by the terms of the contract, a greater sum is to be paid upon default in the payment of a lesser sum at a given time, the provision for the payment of greater sum will be held a penalty; second, where, by the terms of a contract, the damages are not difficult of ascertainment according to such terms and the stipulated damages are unconscionable, the latter will be regarded as a penalty; third, within these two rules parties may agree upon any sum as compensation for the breach of a contract." 1 Sutherland on Damages, § 283.

Applying the foregoing principles to the facts in this record, the court is of opinion that the agreement was enforcible as one for stipulated damages, and was not a penalty. The evidence shows that this was a large body of land; and the contract called for the cutting of only one kind of trees thereupon, with the stipulation that the trees of merchantable size and quality must all be cut clean, so that isolated merchantable trees would not be left. The purpose of this was plain and reasonable. The landowner sold all of the merchantable ash timber upon this large body of land, and his compensation therefor was dependent upon the amount of timber cut; he desired it all cut, in order that he might obtain the full price for all of his ash timber on this tract. The evidence shows that where a tract is sparsely timbered, with just a few isolated trees of merchantable value left standing, the market value thereof would be less than the market value of the same amount of timber on a heavily timbered tract, on account of the increased expense of hauling it out; and, it might be added, on account of the difficulty to find purchasers for small quantities of timber.

In order to avoid having isolated merchantable trees scattered over a large tract, the land owner exacted this clause in the contract. It would be difficult to find a more positive element of damage, and yet the measure of it is indeterminate and dependent on many conditions.

Turning to Mr. Sutherland's test, which is a fair deduction from the authorities, the contract cannot be condemned as one requiring a greater sum to be paid in default of the payment of a lesser sum at a given time; nor as one where the damages are not difficult of ascertainment and the amount stipulated is unconscionable. It will not do to say that the amount is unconscionable because the price of ash timber had risen $1.50 per thousand feet during the life of the contract. Had it fallen $1.50 during that time, certainly there could be no claim that it was unconscionable; and the fluctuation in the market of salable commodities is just as liable to be on the one side as on the other. This fact furnishes a reason why the parties might contract for a fixed price and thereby escape market fluctuations.

It is argued that the landowner is not damaged. That his trees have increased in value, and that he is seeking to exact a higher price therefor than they were worth at the time he made the contract, and yet retain the trees. And it is further argued that where the damages are capable of ascertainment, the amount fixed will be disregarded, although declared to be liquidated damages. But the question is not as to the status of the parties at the time when the contract terminated, but as to the status of the parties at the time they made the contract. It may be, as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then under the authorities there is no reason why that may not be anticipated and contracted for in advance.

The Supreme Court of the United States have reviewed this subject fully in *Sun Ptg. & Pub. Assn.* v. *Moore,* 183 U. S. 642. Referring to the contention made in that case, which was sustained by some decisions, that where actual damages can be assessed from testimony, the court must disregard any stipula-

tion fixing the amount and require proof of the damage sustained, the court, speaking through Mr. Justice White, said: "We think the asserted doctrine is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court." And then the court reviewed the authorities, seeking, as it said, to demonstrate the soundness of its repudiation of that asserted doctrine; and said: "The decision of this court on the doctrine of liquidated damages and penalties lend no support to the contention that parties may not *bona fide,* in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of an agreement. On the contrary, this court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract fairly construed, it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract."

The contract for the one dollar per tree was valid, and should be enforced.

There was no error in the trial of the issue on the count for timber cut and not hauled, and the judgment on that count is affirmed. The judgment on the count for trees left standing is reversed and cause remanded for a new trial on that count.