NEVADA COUNTY BANK v. SULLIVAN.

Opinion delivered February 7, 1916.

DAMAGES—BREACH OF BUILDING CONTRACT—STIPULATION FOR LIQUIDATED DAMAGES—VALIDITY—REASONABLENESS.—By the terms of a building contract, the contractor agreed to complete the building by a certain date, and the contract provided for the payment of $10 per day to the owner, for every day past the time set for the completion of the building. The lower floor of the building was for the sole use of the owner in its banking business. The contractor failed to deliver the building until several months after the date set in the contract, and the evidence showed that plaintiff was put to considerable inconvenience, and suffered damages which could not be estimated upon the basis of the rental value of the building. *Held*, under these facts, the contract contained a stipulation for liquidated damages, which was enforcible, as the amount stipulated for appeared to bear a reasonable relation to the damages contemplated at the time the contract was entered into.

Appeal from Nevada Chancery Court; *J. D. Shaver*, Chancellor; reversed.

*Horace E. Rouse*, for appellant.

1. The delay was inexcusable and the damages were liquidated at $10 per day. Where parties by the terms of their agreement expressly provide whether the damages shall be liquidated or unliquidated, they will be so construed by the courts. 13 Cyc. 94, and note 35; 56 N. E. 892; 14 App. D. C. 180; 183 U. S. 662, 46 L. Ed. 378; 183 U. S. 661; 20 N. E. 504. The contract says liquidated damages and the intention of the parties govern; 30 S. W. 560.

2. Appellant was entitled to the cost of correcting defects in the cornice. 97 Ark. 278; 64 *Id*. 34. Also, to the saving in hardware and the cost of correcting the stone. 97 Ark. 278. There was no waiver of the full

amount of the liquidated damages. Money paid by mistake in ignorance of the facts may be recovered. 102 Ark. 159, 160. Appellant could have paid the entire contract price without waiving any rights, and then sued for damages for the delay. 114 N. Y. Supp. 1084.

3. The damages were liquidated; not a penalty. 14 Ark. 329; 56 *Id.* 384; 72 *Id.* 524; 14 *Id.* 315, 327-8; 1 Suth. on Dam. (3 ed.), § 291, p. 761; 38 N. E. 1061; 13 Cyc. 98, 99; 69 Ark. 118; 110 Va. 358; 66 S. E. 46; 54 Ark. 340. It was unnecessary to prove the actual damages. 57 Ark. 168; 46 L. Ed. 366; 121 Fed. 609; *Ib.* 617, 618. The word "sole" in 104 Ark. 16, means only or exclusively. 11 App. D. C. 358, 369, 373; 8 Words & Phr., 6343. The rule as to the rental value of the building being the measure of damages does not apply here. 104 Ark. 9-16. The decree is erroneous and should be reversed and judgment entered here for the proper amount.

*McRae & Tompkins,* for appellee.

1. The delay was excusable as appellee used due diligence in getting the stone specified. 25 S. W. 1122.

2. Nothing should be allowed for alleged defects of cornice; saving in hardware or stone setting, but appellee should be allowed for extras.

3. Liquidated damages may be defined to be a *fixed sum as compensation* stipulated by the parties as the amount of damages for a breach and in lieu of actual damages. A penalty is a sum to be paid or forfeited upon nonperformance of a contract, its purpose being to *insure* performance rather than compensation for the breach. Courts do not lay down any general *rule* which will decide each case as presented, each case standing upon its own facts. It is, however, the tendency of courts to regard stipulations for damages as of the nature of a penalty rather than as liquidated damages in doubtful cases, as by doing so compensatory damages may be allowed and justice sustained. 13 Cyc. 94; 183 U. S. 642; 20 N. E. 504; 104 Ark. 9-16; 73 *Id.* 432; 48 Pa. St. 450; 92 Ark. 545; 69 *Id.* 114; 14 *Id.* 329; 56 *Id.* 384; 72 *Id.* 524; 57 *Id.* 168; 112 *Id.* 133; 55 N. E. 398; 38 *Id.* 1061; 66 S. E. 46; 160 S. W.

311; 128 N. C. 69; 84 N. W. 490; 13 So. Dak. 530; 19 Atl. 274; 45 N. W. 472; 32 S. W. 24; 72 Mo. App. 673; 108 Am. St. 55; 29 Neb. 385, etc.; 72 Ark. 529; 73 Ark. 436; 106 Ark. 279.

SMITH, J.   On May 1, 1912, appellee entered into a written contract with the building committee of the Nevada County Bank by which he agreed to tear down and clear away the debris of its old building and construct, according to plans and specifications therefor, a new two-story brick building for the sum of $10,000, payable on estimates of the architect every two weeks in such sum as would not exceed 90 per cent of the value of labor and material furnished since the last preceding estimate, except that the final estimate should be for the balance due under the contract.

The contract provided that the building should be completed on or before August 15, 1912, and contained the following provision:

"And the contractor agrees to pay to the owner the sum of $10 per day as liquidated damages for each and every day which shall elapse between the time of completion and the time of actual completion."

The building was not completed within contract time, the lower floor not being completed and accepted until December 15, 1912, and the upper floor was not entirely completed until about February 15, 1913.

During the progress of the building certain extra work was ordered and after the completion of the building, a controversy arose over the cornice of the building and damages were claimed against appellees for defective work alleged to have resulted from the failure to follow the plans and directions of the architect. The parties undertook to adjust their differences and each made the other a proposition for a settlement, but each proposition was rejected. Whereupon appellee commenced suit for the balance which he alleged was due him, and sought to enforce a lien on the building to secure this sum.

As has been said, only the first floor of the building was ready for occupancy by December 15, at which time appellee wrote the following letter:

"Prescott, Ark., December 14, 1912.
"Building Committee Nevada County Bank, Prescott, Ark.

"Gentlemen: You may occupy the first floor of the bank building being erected by me under contract with you, without such occupancy in any way being considered an acceptance of the job or a waiver of any of the terms and provisions of my contract with you.

"Yours truly,
"J. A. Sullivan."

Upon receipt of this letter, appellant occupied the lower floor of the building, but we do not understand the proof to show that appellant would have had tenants ready to move into and occupy the offices on the second floor. Upon the contrary, the proof appears to be that even now some of those rooms are unoccupied. There was conflicting evidence upon the question of responsibility for the delay in the completion of the building, but the chancellor found that issue in favor of appellant. And there was also conflicting evidence upon the question of extra work and defective work, and we think the chancellor's finding on those questions is not against the preponderance of the evidence.

The important question in the case is whether the provision for the payment of $10 for each day's delay was a stipulation for a penalty or an agreement for liquidated damages. The contract allowed about three and one-half months for the erection of the building, and a contractor of much experience testified that sixty days would ordinarily have been sufficient time for the erection of the building where reasonable diligence was used in pushing the work. It was shown on behalf of appellant that its old building was torn down and carted off, and that the bank moved into the general mercantile store of a Mr. Hamilton across the street, where a space of about 8x12 or 14 feet was furnished, and for which a charge of $10 per month was made. Mr. Hamilton permitted this use of his store only until the time when it had been represented the bank building would be completed, after which time he demanded for his own use this space, whereupon the officers

of the bank moved into a part of the building used by Mr. Hamilton as an office, and shared there with Hamilton a standing desk from which the bank's business was transacted. There was no provision for keeping cash except in a cash drawer, and the bulk of the money was kept in the vaults of a competitive bank, while a part of the books were kept in a warehouse, and others in the competitive bank, and the remainder in their own safe on the street, and that other things and valuable papers were kept in the vaults of the competitive bank, to which place they were required to go when any of them were needed. It was also shown that $8,000 had been borrowed from a bank in Little Rock to be used in paying for this building, and under the loan contract this money could be used for no other purpose, and was kept on deposit with the bank from which it had been borrowed, during all of which time interest was being paid on it at the rate of 6 per cent. per annum. It was shown that there was much expense in moving and removing from Hamilton's stores as well as inconvenience and annoyance, during which time appellee was being prodded to complete the building. The cashier of appellant bank testified that he had no facilities for transacting the bank's business, that he lost some of the records temporarily, and that there was constant annoyance in keeping up with the records because of the lack of proper places to put them, and that there was no way to measure the annoyance and trouble of having no facilities for the transaction of the bank's business, and that this condition spoiled his business and ruined his collections for that fall, and that $10 per day would not, and did not cover the actual loss sustained by the bank by reason of being kept out of their building. That the fall of the year is the season for general collections and the acquisition of new depositors, and that there were deposits which the bank failed to get because of its lack of facilities.

In answer to all of this, it is insisted that appellee is not responsible for appellant's failure to properly equip itself for business, and that if its loans were not paid, the

interest continued to run, and that the rental value of the building was the measure of the damages.

The court found that appellee complied with his contract except for the delay, and that he was entitled to credit for the extras claimed, but declared the stipulation herein set out to be a penalty and unenforceable, and that it was placed in the contract to insure performance, and not for compensation; that the damages are easy of ascertainment, and are measured by the rental value of the building, and fixed appellant's damages for the delay from August 15 to December 15 at $125 per month, and from December 15 to February 15, at $50 per month, which damages were deducted from the sum found due appellee, leaving a balance in his favor of $66.63, for which amount a judgment was rendered. It was decreed that appellant was entitled to nothing as liquidated damages nor for defects in the cornice, and that appellant had waived its claim, if any it had, to liquidated damages, and found adversely on appellant's counterclaim, except a small item which was allowed on the rents as set out above.

There was an appeal and a cross-appeal, and it is now insisted that appellant waived any claim for liquidated damages by reason of the fact that at the time when such damages were due, if they were due at all, appellant paid appellee certain money which did not leave still due appellee a sufficient sum to pay these damages. But it was shown that $500 was paid appellee under a mutual mistake, as a result of which mistake appellant did not know of this $500 payment at the time it made the payment said to constitute the waiver, and it was further shown that the money was advanced to pay the claims of certain materialmen.

There are an almost unlimited number of cases which discuss the principles of law which are to be applied in determining whether or not a provision like the one here contained is an agreement for liquidated damages or a stipulation for a penalty. A large number of the leading cases on this subject is cited in the case note to *Webster* v. *Bosanquet,* an English case reported in 24 Ann. Cases

1019, and in the cases of *Madler* v. *Silverthorne,* 34 L. R. A. (N. S.) 1, and *Evans* v. *Moseley,* 50 L. R. A. (N. S.) 889.

But we need not go beyond the reports of our own State for an abundance of authority upon this subject. See, *Williams* v. *Green,* 14 Ark. 329; *Young* v. *Gaut,* 69 Ark. 114; *Lincoln* v. *Little Rock Granite Co.,* 56 Ark. 405; *Nilson* v. *Jonesboro,* 57 Ark. 168; *Lawrence County* v. *Stewart,* 72 Ark. 525; *Nevada County* v. *Hicks,* 38 Ark. 557; *Haldeman* v. *Jennings,* 14 Ark. 329; *Blackwood* v. *Liebke,* 87 Ark. 545; *Chickasawba Railroad Co.* v. *Crigger,* 83 Ark. 364; *Westbay* v. *Terry,* 83 Ark. 144; *Tidwell* v. *Southern Engine & Boiler Works,* 87 Ark. 52; *Cox* v. *Smith,* 93 Ark. 371; *Wait* v. *Stanton,* 104 Ark. 16; *Dilley* v. *Thomas,* 106 Ark. 279; *Kimbro* v. *Wells,* 112 Ark. 133; *Glasscock* v. *Rosengrant,* 55 Ark. 376.

The principles which control in the decision of this question have been applied to an almost infinite variety of conditions, and an apparent contradiction in some of the cases grows out of this fact. But there appears to be no substantial difference in the declaration of the principles themselves. An early and the leading case on this subject is that of *Williams* v. *Green, supra,* which case is recognized as an authority everywhere, and has been widely cited and quoted from. Our last case on this subject is that of *Montague* v. *Robinson,* 122 Ark. 163.

The case upon which appellee chiefly relies, and the one said to be controlling here, is that of *Wait* v. *Stanton,* 104 Ark. 16. But the principles announced there are in harmony with numerous other declarations of the court on this subject, and when these controlling principles were applied to the facts of that case, the court was constrained to hold the provision of that contract for the payment of damages to be a penalty. Under the facts of that case, the damages were of easy ascertainment, and were measured by the rental value of the property, and the damages provided for were entirely disproportionate to any damages, which in the contemplation of the parties, could have been sustained by delay in the nonperformance of the contract.

The instant case is clearly distinguishable on the facts from the case of *Wait* v. *Stanton, supra.* The building here contracted for was primarily a bank building intended for use in connection with that business, and only the second floor of the building was intended for rental purposes. At the time of making this contract, the parties must necessarily have contemplated that damages would result from delay in the construction of the building and in the very nature of the case these damages would be indeterminate and difficult of ascertainment, and as we view this evidence, it is even now impossible to determine with that degree of certainty which should exist for a jury to assess damages, what these damages were. Who can know what damages appellant sustained from loss of business through the lack of facilities to transact business? It is obvious that these facilities were indispensable to the successful conduct of the banking business, and it is manifest from the very date fixed for the completion of this contract that it was appellant's desire to have its building ready for occupancy before the beginning of its busy season. The evidence is that these conditions were discussed before the contract was signed, but even though such was not the case, it must have been manifest at the time the contract was made that damages would result from delay in its performance, and that this damage would be indeterminate and difficult of ascertainment. Moreover, the sum named is shown to bear a fair proportion to the damage sustained, indeed, the cashier of the bank says that the damage exceeded that amount. But it is not necessary that we find the fact so to be. It is sufficient to support the finding that these liquidated damages for the sum named appear to bear some reasonable proportion to the damage contemplated, and such we find the facts to be.

It follows, therefore, that the court erred in not allowing appellant's claim for the liquidated damages provided by the contract. The decree will, therefore, be

modified to allow appellant $1,220 on that account and to disallow the $600 allowed it on account of the rent, and the cause will be remanded with directions to the court below to enter a decree accordingly.