EAST ARKANSAS LUMBER COMPANY *v.* SWINK.

Opinion delivered March 26, 1917.

1.  BUILDING CONTRACTS—RIGHTS OF PARTIES IN THE EVENT OF BREACH— A contract between a school district and a building contractor provided, (1) that if the latter failed to perform his contract that the district might do so, and charge the cost thereof to the contractor, and (2) that if the building was not completed by a certain date that the contractor "forfeit the sum of $10.00 per day as liquidated damages." The building was not completed on the day named and the district completed the same, charging the contractor with the cost. *Held*, the two provisions of the contract provided for separate and distinct remedies for different breaches, and not for the same breach, and that both provisions could stand.

2.  BUILDING CONTRACTS—CONTRACT FOR LIQUIDATED DAMAGES.—A building contract provided that if the building was not completed by a certain time that the contractor agreed to forfeit the sum of $10.00 per day as liquidated damages. *Held*, the contract provided for liquidated damages, and not a penalty.

Appeal from Lawrence Chancery Court, Eastern District; *Geo. T. Humphries*, Chancellor; affirmed.

*Basil Baker* and *Horace Sloan*, for appellant, Ruth Less.

1. The alleged provision for liquidated damages can not be enforced for the reason that the contractor was discharged prior to the completion of the building. Sutherland on Damages, § 280; 138 N. Y. 480; 34 N. E. 201; 115 S. W. 6, 12; 184 N. Y. 543, 76 N. E. 1110; 91 N. Y. Supp. 582; 20 L. R. A. (N. S.) 350.

2. The provision for damages is a penalty and will not be enforced in equity. The district could only recover actual damages and none were shown. 122 Ark. 235, 241; 112 *Id.* 126, 133; 87 *Id.* 545; 104 *Id.* 9; 72 Mo. App. 673; 6 Cyc. 114; 14 Ark. 329; 40 Barb. 175; 55 Ark. 376, 381; Sutherland on Damages, § 283, p. 729; 46 S. W. 1061. The contract itself settles the amount of recovery. Art. 5. The school district has at least $716.89, which should be paid to appellant.

*H. L. Ponder*, for East Arkansas Lumber Co. and Pfeifer Stone Co.

1. We adopt the able brief for Ruth Less, but in addition call the court's attention to two matters. The district took charge and assumed the debts. The materials were sold to the district and it is liable as trustee.

2. Swink contracted with Snelling and all the directors assented to the contract and signed it. This was a waiver of the damages or penalty for delay.

3. The bond was sufficient and binding. 46 L. R. A. (N. S.) 326; *Ib.* 698; 27 *Id.* 578; 68 Pac. 576.

4. The money held by the district is a penalty and not liquidated damages. 13 Cyc. 94; 183 U. S. 642; 104 Ark. 9-16; 73 *Id.* 432; 122 *Id.* 163, 235.

No judgment was taken against Swink. In all fairness the district should not be permitted to keep this money to the loss and damage of these material furnishers.

*W. P. Smith* and *G. M. Gibson*, for appellees, School District et al.

1. The district never agreed to pay the bills. It acted within its rights when it retained 15 per cent. of the contract price, and is entitled to hold it as liquidated damages incurred by the delay. 122 Ark. 255; 14 *Id.* 315; 183 U. S. 642. Contracts for liquidated damages have been upheld in many cases. 112 Ark. 126; 121 *Id.* 45; 87 *Id.* 545; 122 *Id.* 163; 69 *Id.* 114; 56 *Id.* 504; 57 *Id.* 168; 108 U. S. 436; 72 Ark. 525; 83 *Id.* 114, 364; 87 *Id.* 52; 93 *Id.* 371. The rule is well settled in Arkansas and is sustained by the great weight of authority, citing many cases. The damages stipulated were reasonable. 56 Tex. 594; 112 Ark. 126; 183 U. S. 642; 122 Ark. 163, etc.

2. It is immaterial what the parties call it, whether "penalty," "forfeit" or "liquidated damages," the intention of the parties governs. 48 Pa. St. 450; 152 Mich. 386; 116 N. W. 193; 125 Am. St. 418.

3. No testimony as to the actual damages to the school board was necessary. The damages were stipulated. 56 Ark. 504; 56 Tex. 594; 121 Fed. 818; 57

Ark. 168; 10 Wisc. 30; 53 N. Y. App. 628; 59 N. E. 1125; 6 Cyc. 21. The sum is reasonable. 1 Sutherland on Damages, § 283; 122 Ark. 163. The burden was on the plaintiff to show that the provision was a penalty. 30 S. W. 558.

4. Swink's contract was properly terminated for noncompliance with section 5 of the contract. This section and section 6 should be read together and the district can recover. 46 S. W. 1061; 19 Fed. 239; 29 S. W. 467; 140 Fed. 465.

5. The decree is in all things correct. The district never agreed to pay the bills for freight, labor, materials, etc. The new contract with Snelling did not reLease Swink. No judgment against Swink was necessary, as the board under the contract had a right to retain the money now held as liquidated damages.

6. The appeal as to the East Ark. Lumber Co. and Pfeifer Stone Co. should be dismissed for failure to comply with Rule 9. The bond is not set out in the abstract.

*W. E. Beloate*, for Swink and the U. S. Fidelity Co.

1. No damages whatever were proven. 87 Ark. 52.

2. The right to liquidated damages was lost by the discharge of the contractor prior to the completion of the building. 46 S. W. 1061.

3. Only actual damages were contemplated by the contract, not liquidated damages. 115 S. W. 6.

4. The lumber company had no right to sue. 107 Ark. 501. The provisions of the bond were for the benefit of the district and not for laborers or material men. The bond is not set out in the abstract. The bonding company is not liable. There was no fund subject to garnishment.

HUMPHREYS, J. W. E. Swink entered into a contract with the Portia School District, on the 28th day of August, 1914, to erect a two-story brick school building, in accordance with plans and specifications, for the consideration of $6,675.00.

Article 5 of the contract is as follows: "Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after three days written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action the owner shall also be at liberty to terminate the employment of the contractor for said work and to enter upon the premises and take possession for the purpose of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expenses incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expenses shall exceed such unpaid balance, the contractor shall pay the difference to the owner.  The expense incurred by the owner as herein provided, either for furnishing materials or for furnishing the work, and any damages incurred through such default shall be audited and certified by the architect, whose certificate thereto shall be conclusive upon the parties."

Article 6 of the contract is as follows: "The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, towit:

"All work to be completed on or before the 20th day of January, 1915. In case of failure of contractors to complete building within the time above mentioned he agrees to forfeit the sum of $10 per day as liquidated damages."

W. E. Swink had contracts elsewhere and could only be present a part of the time during the construction of the building. He appointed a foreman and arranged with the secretary of the school board to pay his freight, material and labor bills, when O. K'd by himself or his foreman, out of the advances that might be due him from time to time, according to the architect's estimate. He also executed a bond to the Portia School District with the United States Fidelity & Guaranty Company of Baltimore, Md., as his surety. His bond was filed with the circuit clerk, as required by law. It was the intention of the parties to give a bond required by chapter 101, subdivision 2, of Kirby's Digest of the Statutes of Arkansas. On January 20, 1915, the secretary of said school board notified W. E. Swink in writing that the building was not completed and ready to be accepted. The work progressed on the building until Febuary 12, 1915, at which time W. E. Swink sublet the completion of the building to J. H. Snelling, for the sum of $250, by and with the consent of the school board. The work to be done by the sub-contractor was to be to the satisfaction of Clyde A. Ferrell, architect on the building. The building not having been completed by the sub-contractor, on April 12, 1915, the school board, through its secretary, on that day notified W. E. Swink that he had often violated article 5 of the original contract and that under the advice of the architect, the school board intended to take charge and complete the building, and according to said notice did take charge of said building on the 19th day of April, following, and completed it at an expense of $299.36. After completing the building, the school board sold the balance of the material on hand for $121.94.

East Arkansas Lumber Company furnished materials for the construction of this building, upon which there was a balance due of $2,243.34 when the building was completed. Pfeifer Stone Company furnished materials used in the construction of said building, upon which there was still due $123 when the building was completed.

W. E. Swink was indebted to Ruth Less in the sum of $875, for which amount she had obtained a judgment in the circuit court for the Eastern District of Lawrence county, Arkansas. Under the terms of the contract, the school board withheld fifteen per cent. of the contract price, or the sum of $1,016.25, and applied $299.36 of said amount to labor and materials in completing the building, and now has $716.89 of the contract price in hand and claims the right under the contract to appropriate it as liquidated damages on account of the failure of the contractor to complete the contract on January 20, 1915.

On the 28th day of April, 1915, Mrs. Ruth Less brought a suit in the chancery court for the Eastern District of Lawrence county, Arkansas, setting up her judgment as the basis of her action, alleging that on account of the insolvency of Swink, she had been unable to collect same; also alleging that the fifteen per cent. of the total contract price was wrongfully withheld by the school district, same being the property of W. E. Swink. She prayed that equitable garnishment be directed and the fund be impounded and applied to the payment of her judgment.

On November 25th, following, the East Arkansas Lumber Company and the Pfeifer Stone Company brought suit against W. E. Swink, United States Fidelity & Guaranty Co. of Baltimore, Md., school district of Portia, and J. E. McCall, E. B. Ivie, Whit Matthews, T. W. Petty, W. I. Moore and James Hatfield, directors of Portia school district, alleging as a basis for their action the amounts due for materials furnished in the construction of said school building; also that the

fifteen per cent. of the total contract price withheld by the school board was without right or authority and that it was an amount justly due from the school board to Swink; that Swink was insolvent; and asked that the amount be applied to the payment of their claims. They also alleged that Swink had executed a bond in compliance with chapter 101, subdivision 2 of Kirby's Digest of the Statutes of Arkansas with the United States Fidelity & Guaranty Company as bondsman, but that by mutual mistake, the Portia school district was named as obligee in the bond instead of the State of Arkansas, and prayed a reformation of the bond and for judgment against the bondsman, United States Fidelity & Guaranty Company, for their claims.

The Portia school district answered the complaint of Mrs. Less and denied that it was indebted to W. E. Swink in any sum growing out of the contract to erect a school building; also answered the complaint of the East Arkansas Lumber Co. and Pfeifer Stone Co., admitting the execution of the contract with W. E. Swink to erect a school building for the amount alleged, but denied it owed W. E. Swink any balance under the terms of the contract; admitted that Swink executed the bond to it for the faithful performance of the contract, but denied it was executed in accordance with law; denied that Swink owed the East Arkansas Lumber Company $2,243.34 or the Pfeifer Stone Co. $123.00 for materials used in erecting the school building; and denied the insolvency of Swink.

W. E. Swink answered the complaint of the East Arkansas Lumber Company and Pfeifer Stone Company, denying any personal liability on account of materials furnished, stating that if any sum was due them for materials used in the erection of the school building the school board owed it. He admitted making the contract for the erection of the building and the execution of a bond for the faithful performance thereof, but alleged he was released from the contract

and that the Portia school district had declined to accept the bond he offered it.

The United States Fidelity & Guaranty Company answered that under the terms of the bond it was released.

These cases were consolidated and tried as one case by the chancellor, which resulted in the dismissal of the complaints of Pfeifer Stone Company and Ruth Less for the want of equity, and the dismissal of the complaint of the East Arkansas Lumber Company against all appellees except the Portia school district, and as against it a decree was rendered in favor of East Arkansas Lumber Company for $121.94, on account of materials sold after the building was completed. The cause is here on appeal.

(1) Counsel for Ruth Less insist that articles 5 and 6 of the contract provide alternative remedies for damages in the event of failure to complete the building in accordance with the terms of said contract, and that the election of the remedy provided in article 5 estopped the Portia school district from asserting the remedy provided in article 6. Their construction is that the remedy provided in article 6 could be insisted upon in the event that the contractor personally finished the building, and not otherwise, and the contractor having been discharged, and the contract completed by the Portia school district, no right remained in said district to enforce its claim for liquidated damages on account of delay in the completion of the building. We cannot agree with learned counsel in this construction of the provisions in question. We see no conflict whatever between the two sections. Article 5 permits the school district to take charge of said building and complete it at the expense of the contractor in case he should refuse and neglect to supply a sufficiency of properly skilled workmen, or materials of the proper quality, or failed in any respect to prosecute the work with promptness and diligence, or failed in the performance of any of the agreements contained in the contract. Article 5 clearly

refers to any breach of the contract not otherwise specifically provided for in the contract. Article 6 provides that the work shall be completed by the 20th day of January, 1915, and in case the contractor fails so to complete the building by that time, then that he will pay the sum of $10 per day as liquidated damages for the time he is delinquent. Articles 5 and 6 of the contract provide for separate and distinct remedies for different breaches, and not the same breach. We have examined the following cases cited by appellee in support of this construction of like provisions in contracts and find them in accord with our views: *Watson et al.* v. *DeWitt County*, 46 S. W. 1061; *Texas & St. L. Ry. Co.* v. *Rust*, 19 Fed. 239; *Collier* v. *Betterton*, 29 S. W. 467; *Fruin-Bambrick Const. Co.* v. *Ft. Smith & W. R. Co.*, 140 Fed. 465.

(2) The paramount issue presented in this case is whether article 6 of the contract is for a penalty or liquidated damages. This court has been frequently called upon to construe sections of this character in contracts, and the general rule deduced from all the cases is, that if at the time of making the contract it would be difficult to anticipate and definitely arrive at the amount of actual damages that might result from a failure to complete the building within the time specified, and if the amount fixed in the contract is not greatly out of proportion to the amount of damages that might be sustained, and if inferable, from the situation of the parties at the time of making said contract, and the language used, that they intended to agree upon a definite or fixed amount for damages; then, the provision will be construed as an agreement for liquidated damages and not for a penalty. *Lincoln* v. *Little Rock Granite Co.*, 56 Ark. 384; *Nilson* v. *Jonesboro*, 57 Ark. 168; *Young* v. *Gaut*, 69 Ark. 114; *Blackwood* v. *Liebke*, 87 Ark. 545; *Kimbro* v. *Wells*, 112 Ark. 126; *Nevada County Bank* v. *Sullivan*, 122 Ark. 235; *Montague* v. *Robinson*, 122 Ark. 163; *Pine Bluff Hotel Co.* v. *Monk & Ritchie*, 122 Ark. 308.

In the case of *Pine Bluff Hotel Co.* v. *Monk &
Ritchie, supra,* this court recently said: "The courts
are more and more disposed to follow the obvious
intention of the parties as expressed in the contract,
by upholding a stipulation of this sort as being one for
liquidated damages unless it is clear that it was in-
tended as a penalty in disguise." The facts in the
instant case are to the effect that this school building
was being constructed on the same block of land upon
which the old school building was situated; that the
school building was being built for school purposes and
that there was no intention whatever to rent it. In
fact, there is nothing in the record from which it might
be inferred that it could be rented for any purpose,
and so it is apparent that the rental value could not
be taken as a criterion for measuring damages. The
contract itself provides that the amount of $10 a day
shall be paid the school board by the contractor as
liquidated damages in case of his failure to complete
said building upon said date.

In applying the test laid down in the cases cited
above to the facts in this case, it can be stated that the
actual damages the school district might have sustained
would have been hard to anticipate and definitely
prove; the situation of the parties at the time, together
with the language used in the contract, indicates that
the intention of the parties was to provide for liquidated
damages and not a penalty; the amount fixed is not
greatly out of proportion to the damages that might
have been sustained.

Learned counsel for East Arkansas Lumber Com-
pany and Pfeifer Stone Company not only joined in
the contentions made by counsel for Ruth Less but
further contend that their clients are entitled to recover
on the bond. The bond is not abstracted by them nor
by counsel for Ruth Less. We are precluded by a
familiar rule of this court from construing the bond.
The answer of the United States Fidelity & Guaranty
Co. stated that it was released on the bond because no

notice was given it of the failure of the contractor to complete the building on January 20, 1915, as provided by the terms of the bond.    We explored the record far enough to ascertain whether the bond required that notice be given it within a certain time of the failure of the contractor to finish the building by January 20, 1915, and found that it did.    We presume the failure to abstract the bond is due to the fact that the bond on its face verifies the defense pleaded by the bonding company.

. The decree of the chancellor is in all things affirmed.