GEORGE W. CAMPBELL, Assignee,

*v.*

LAVINA DAY *et al.*

1. AGENCY—*architect to supervise work—of his authority to employ others to do work.* An architect employed only to supervise and direct the work to be done by a contractor and those acting under him, has no authority to employ another to do work on a building which the contractor has undertaken to do.

2. ACTION—*when person for whom work is done is liable by not objecting.* Where a party employs another to furnish all the materials and erect a building, into whose hands the whole matter is put, the contract providing for changes, and contemplating his employment of others as to parts of the work, which he does, the whole to be done under the supervision of an architect, and a part of the work proving defective is taken out, and replaced by another person whom the contractor has had working for him, the owner of the building will not be held responsible to such person so replacing the work merely because he saw him at work and made no objection, but hurried him on, as he had the right to suppose such work was being done under and for the contractor.

3. The doctrine that a party seeing work progress for him, and making no objection thereto to the person doing the same, is liable to the person so working, has no application where the entire work is contracted to and placed under the control of another, who has the power to employ whom he pleases.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding.

Messrs. BARBER & LACKNER, for the appellant.

Mr. JNO. N. JEWETT, and Mr. WILLIAM E. MASON, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In September, 1872, appellees, as administrators of the estate of Isaac C. Day, deceased, entered into a contract with T. J. Darcy, whereby the latter undertook to furnish materials for erecting and finishing a certain building in the city of Chicago, for the sum of $59,000.

By the terms of the contract the building was to be completed in a good and workmanlike manner, according to the plans and specifications prepared by W. L. B. Jenny, architect, in the following month of December. The compensation was to be paid from time to time, as the work progressed, upon the architect's certificates, reserving a percentage until the whole work should be finished, the owners being at liberty to make changes and alterations without prejudice to the contract, and not to be answerable for any loss or damage that might happen to the work. Subsequent to the making of this contract, Darcy entered into a contract with Burkhardt & Sherwin, whereby the latter undertook to do all the cut stone work. The plans and specifications, which were made part of the contract between appellees and Darcy, provided for brick piers in the basement of the building, upon which the super-structure was to be erected.

The building was not completed in December, as provided by contract, nor for some months thereafter. Work, however, progressed on the building during the month of December and the following winter months, and, as is said by one of the witnesses, about the time the frost was coming out, (which we presume was in the latter part of winter or early part of spring,) the brick piers gave away, threatening the safety of the superstructure. From the evidence of Mr. Jenny, the supervising architect, it appears that bad workmanship was the cause of the weakness in the piers. These brick piers were taken out, and replaced with stone piers. This work was done by Burkhardt & Sherwin, and the present suit is

prosecuted to recover the value of their services, etc., in so doing. The judgment below was for the defendants.

The substitution of the stone piers was ordered by the supervising architect, Jenny, after consultation with Darcy.

Appellant complains of the refusal of the court to give his instruction as asked, and also of those which the court gave of its own motion. That asked and refused was as follows:

" If the jury believe, from the evidence, that the defendants employed one Jenny, as their architect, to draw for them plans and specifications for a building to be erected for defendants, and to superintend the building during its erection ; that they entered into a contract with Timothy J. Darcy to erect such building and complete it for a stipulated price, according to such plans and specifications; that such plans and specifications called for brick piers under said building, and was originally erected on brick piers; that during its progress the brick piers gave way, and the building was settling and falling down; that thereupon said Jenny directed Burkhardt & Sherwin to take down the brick piers and put in place thereof stone piers, for the purpose of preventing said building from coming down; that the defendants knew of this change, and saw Burkhardt & Sherwin substitute stone piers for the brick piers, and made no objections thereto, but, on the contrary, hurried them on; and that defendants knew that their original contracts called for brick piers and not stone piers—then the jury must find for the plaintiff in such amount as he has shown, from the evidence, said work and material were reasonably worth at the time when performed and delivered."

And the following are the instructions which the court gave of its own motion :

" If the jury believe, from the evidence, that the building in question was in process of erection by Darcy under the contract of the 6th of September, 1872, between him and defendants, given in evidence, and that Jenny acted as architect

under said contract, then, although the jury may further believe, from the evidence, that Jenny, while so acting, employed Burkhardt & Sherwin to remove the brick piers and put stone ones in their places, and that there was necessity for so doing, yet the court instructs the jury, as a matter of law, that Jenny, by virtue of his position as architect, had no authority to bind defendants by employing said Burkhardt & Sherwin to do said work, and in the absence of proof that defendants authorized Jenny beforehand or at the time to do so, or with full knowledge of all the facts subsequently ratified such act of employment, the jury should find for defendants.

"If the jury believe, from the evidence, that at the time of doing the work in question Darcy was constructing the building, either by himself or his sub-contractors, and that Darcy was doing said work under the said special contract given in evidence, then, although the defendants, or one of them, was present at times while Burkhardt & Sherwin were doing the work in question, and said work was for their benefit or the benefit of the premises, still, the law will not imply an undertaking on the part of the defendants to pay for said work."

We think there is no substantial objection to this ruling of the court below. Jenny, as architect, had no authority to make any contract binding on appellees. His duties were limited to the supervision and direction of work to be done by Darcy, or those acting under him. The contract between appellees and Darcy covered all the work to be done in erecting the house, and while it also contemplated there might be additional or extra work done, for which appellees were to be liable, that work was to be done by Darcy. If the piers were insufficient, it was Darcy's duty to make them sufficient. Without doing this he could not perform his contract. It is true, it was not intended there should be stone piers, but it was required there should be piers sufficient to support the superstructure. The work, therefore, of putting in stone piers was only performing that part of the contract in a differ-

ent way from that contemplated in the contract. That this was a duty enjoined upon Darcy, when directed by the supervising architect, must, then, follow as a legal and logical conclusion.

It was not contemplated, however, that the work was all to be done with Darcy's own hands. As contractor, he simply undertook to have the work done, and was, of course, authorized to adopt all usual and reasonable methods for that purpose. This included the right to sub-let or sub-contract, he being all the time the only party to whom appellees were to look. Burkhardt & Sherwin, the evidence shows, were his sub-contractors. When, therefore, appellees saw them at any particular work, they were authorized to assume they were at work under Darcy, as his sub-contractors or servants; and whether the work was of one kind or another, could make no difference to them. They had put the whole matter in Darcy's hands, surrendered to him the entire possession, and in the absence of notice that he had abandoned the work, they could have no reason to suspect that anybody there engaged was not under him. The doctrine contended for, that seeing the work progress was itself notice that those engaged were working for appellees, would have application were the work not contracted to and placed under the control of another, but can have no application in such a case as this.

The evidence clearly shows that appellees all the time supposed the change in the piers was being done by Darcy, or under his direction, and that they never gave any authority to have it done by others, nor did the architect suppose that he was making a contract with Burkhardt & Sherwin. In what he did and said he assumed they were acting under Darcy, and this, also, seems to have been Darcy's understanding. It was incumbent on Burkhardt & Sherwin, if they intended to charge appellees, to have notified them before they commenced.

The judgment is affirmed.

*Judgment affirmed.*