THE J. G. WAGNER COMPANY, Respondent, vs. CAWKER and others, Executors, Appellants.

*December 17, 1901 — January 7, 1902.*

(1) *Appeal: Consent to finding.* (2–6) *Building contracts: Architect's authority: Condition precedent: Waiver: Liquidated damages or penalty: Time of completion: Deduction for delay: Impeaching award of architect.*

1. By permitting the trial court to answer a question in a special verdict a party is precluded from raising an objection to that finding.
2. A building contract fixed a date for completion of the work and provided for an allowance to the owner of a certain amount per day as liquidated damages in case of delay, but, should the contractor be delayed by the act or neglect of the owner, architect, or other contractors, the time fixed for completion was to be extended for a period equivalent to the time so lost; but no such extension was to be made unless a claim in writing therefor was presented to the architect within twenty-four hours of the occurrence of such delay. *Held*, that the presentation of such claim was a condition precedent to the right of the contractor to claim an extension of the time for completion, and that the architect could not waive such condition.

·3. If the so-called "liquidated damages" stipulated in a building con-
tract are largely in excess of the actual damages, the court will
pronounce the sum so fixed as a penalty and allow the recovery
of such damages only as are fair and reasonable under the circum-
stances.

4. In an action on a building contract the plaintiff's manager testified
that the building was completed on a certain day; but it appeared
that on that day he wrote a letter to the architect stating that
$500 would complete the work under the contract, and asking for
an estimate for the balance due, less that amount and retainage.
Defendants testified that the building was not completed until
some time afterwards. *Held*, that a finding of the special verdict
that the building was completed on the day claimed by plaintiff
was clearly against the evidence.

5. To impeach the action of an architect in certifying the amount due
under a building contract, the evidence must be clear and convinc-
ing and point with reasonable certainty to mistake, fraud, or col-
lusion.

6. Upon such a question the testimony on behalf of the contractor was
to the effect that the architect said that, personally, he would not
insist upon a deduction for delay, but that the defendants claimed
a certain number of days delay and insisted that he make the
stipulated deduction therefor, and that he expected to get more
work from them and would have to yield to their demands. On the
other side were positive denials of such statements, and assurances
of the utmost good faith. *Held*, that the evidence was insufficient
to show fraud or collusion in allowing the deduction.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge. *Reversed.*

On June 16, 1897, the plaintiff entered into a written con-
tract with the defendants to furnish and set up the steel and
iron to be used in the construction of a building to be erected
by the defendants in the city of Milwaukee for the sum of
$16,458. The work was to be done under the direction and
to the satisfaction of Howland Russell, the architect. The
entire framework was to be completed by October 9, 1897,
and all work for the building by November 15th following.
No alterations were to be made in the work shown by the
drawings and specifications except upon the written order

of the architect.   In case the building was not completed at
the time specified it was agreed that the owner was to be
allowed the sum of $50 per day, as liquidated damages, for
every day after that date the work remained unfinished. It
was further provided that, should the contractor be ob-
structed or delayed in the prosecution or completion of his
work by the act, neglect, delay, or default of the owner,
architect, or any other contractor, etc., the time fixed for
the completion of the building should be extended for a
period equivalent to the time so lost; " but no such allow-
ance shall be made unless a claim therefor is presented in
writing to the architect within twenty-four hours of the oc-
currence of such delay.   The duration of such extension
shall be certified by the architect; " but an appeal from his
decision might be made to arbitration.   Payments were to
be made upon written certificates of the architect to the
effect that such payments had become due.   The contract
contained other provisions, not material to this litigation.
Plaintiff entered upon the work, and, not being paid in full,
brings this action to recover the balance claimed to be due.

The complaint, among other things, alleged that plaintiff
had completed the contract; that defendants had failed to
pay the balance due, of $2,808; that the architect, without any
cause, refused to issue a certificate therefor, as required by
the contract; that the defendants had conspired and col-
luded with the architect, and instigated him to withhold
said certificate, to prevent plaintiff from securing its just
demands.   A second cause of action was for extra work
done on the building amounting to $343.16, and contained
similar allegations as to the architect's withholding a
certificate of such extras.

As to the first cause of action, the answer admitted the
contract, denied performance and all allegations of collu-
sion, and alleged payment of all certificates of the architect
which had been presented.   To the claim for extras the

defendant set up the clause in the contract as to to the requirement of a written order from the architect, and alleged that if extra work was done it was without such order. For a counterclaim the defendants set up the clause in the contract as to completion of the work, and alleged that plaintiff did not complete the building until more than thirty-two days after the time stipulated. Damages in the sum of $1,600 were claimed.

In a reply the plaintiff alleged that the delay mentioned was caused by defendants and the architect not furnishing drawings and data to enable it to prosecute the work, by contractors of other parts of the building, and by changes and alterations in the building made by defendants; that no claim in writing for such delay was presented to the architect, because the defendants requested the delay and promised plaintiff that it would not be necessary to secure any certificate of extension from the architect; also that errors were discovered in the drawings and stipulations, upon the discovery of which work was to stop, and the work was thereby delayed more than thirty-two days after November 15, 1897.

On the trial it was shown that the architect delivered to plaintiff the following final certificate:

" $1,551.16 CERTIFICATE.

"Milwaukee, Wis., June 11, 1898.

" *To Estate of E. Harrison Cawker:*

" This is to certify, that *The J. G. Wagner Co.*, contractor for the steel and iron work of the ' Cawker Bldgs.,' is entitled to a payment of $1,551.16, by the terms of contract, dated July 10, 1897.

"HOWLAND RUSSELL, Architect.

| | | |
|---|---|---|
| Contract price .............................. | $16,458.00 | |
| Bal. brought forward........................ | $2,808.00 | |
| | | Remarks: |
| Extra ............... ...... ...... ............. | $343.16 | |
| This certificate............................. | $1,551.16 | |
| Balance .·............................. | $1,600.00 | Forfeited by 32 days' delay at $50.00 per day." |

Plaintiff protested against the allowance for delay. He presented the certificate for payment. The defendants offered to pay if he would receipt in full for all demands. This the plaintiff declined to do. Testimony was given by plaintiff tending to show that the architect had waived a written order as to extra work and the written notice regarding the claim for delay in the work, required by the contract. The following special verdict was rendered:

"1. Did the plaintiff complete and furnish all the work and materials called for by its contract with the defendants? *A. (by the court)* Yes.

"2. What portion of the price named in the contract remains unpaid, and what is the interest thereon at the rate of six per cent. per annum from time the work was commenced? *A.* Balance unpaid on contract, $2,808.00; interest to date, $486.00,—total $3,294.00.

"3. Did the plaintiff, at the defendants' request, furnish certain extra work and materials in the construction of the Cawker Building, and what was the value thereof, with interest thereon at the rate of six per cent. per annum from the completion of the work? *A. (by the court)* Yes. Value of extras, $343.16; interest thereon, $55.85,—total, $399.01.

"4. Did the defendants waive that provision of the contract requiring that no alteration should be made on the work except on the written order of the architect. *A. (by the court)* Yes.

"5. Was the architect, Howland Russell, actuated by fraud, collusion with the owner, or bad faith in rendering the decision embodied in the certificate which has been offered in evidence as to the amount due the plaintiff upon the contract? *A.* Yes.

"6. If you answer the first question in the affirmative, did the defendants waive that provision of the contract requiring that no allowance or extension of time should be given for delays unless the claim therefor should be presented to the architect within twenty-four hours of the occurrence of the delay? *A.* Yes.

"7. If you answer the fifth question in the affirmative, when did the plaintiff complete that portion of the work comprised within the contract? *A.* November 27, 1897.

"8. If you answer the fifth question in the affirmative, then

did the defendants, prior to the 15th day of November, 1897, delay the plaintiff in the prosecution of its contract work, and, if so, how long? *A.* Yes, fifty-six days."

Plaintiff moved for judgment, and defendants to set aside the verdict and for a new trial. Plaintiff's motion was granted, and judgment was entered in its favor, from which defendants take this appeal.

For the appellants there was a brief by *Ryan, Ogden & Bottum,* and oral argument by *L. M. Ogden.*

For the respondent there was a brief by *Nath. Pereles & Sons,* and oral argument by *G. D. Goff.*

BARDEEN, J.   One important stipulation in the written contract was that no alterations should be made in the work shown or described by the drawings and specifications except upon the written order of the architect.   It seems to have been assumed on the trial that this stipulation was sufficiently broad to cover extra work, and was of such a character as that the architect might waive its provisions.   There is no dispute but that extra work was performed, and the amount thereof was determined by the architect and included in the final certificate.   It is not claimed that such work was done upon the written order of the architect, but it is claimed that defendants waived that provision of the contract.   Whether the architect had any power to waive contract provisions of that kind is very doubtful; but, defendants having consented that the court should answer question 4 of the verdict without submission of the fact to the jury, that question is not now before us for decision. Permitting the court to answer that finding in the affirmative precludes the defendant from raising any objection to the finding at this time.

A much more serious question arises regarding the answer to the sixth question.   There is absolutely no evidence in the case that the defendants have personally done anything

from which a waiver of the requirement regarding making claim for an extension of time can be argued. The contract provides that the plaintiff should complete the entire framework of the building by October 9th, and complete *all* work by November 15th. In case of failure so to do the plaintiff was to allow $50 per day as liquidated damages for every day after said last-mentioned date that the work remained unfinished. Should the plaintiff be delayed by the act, neglect, delay, or default of the owner, architect, or any other contractor, then the time fixed for the completion of the building was to be extended for a period equivalent to the time so lost, but no such allowance was to be made unless a claim in writing therefor was presented to the architect within twenty-four hours of the occurrence of such delay, and the duration of such delay was to be certified to by him, subject to an appeal to arbitration. It is admitted that no claim in writing for such delay was ever presented to the architect. It is also true that plaintiff had no communication with the defendants on the subject prior to the final completion of the building. The plaintiff rests its failure to comply with this condition of the contract upon a conversation had by its general manager with the architect during the progress of the work, in which the latter told him that it would not be necessary to give a written notice or demand for additional time. It seems to have been assumed on the trial that the architect had power to waive performance of these conditions of the contract.

The importance of this stipulation, as well as its purpose, is manifest. The very contest that has arisen in this case demonstrates the necessity of some such cautious provision. Disputes frequently arise between different contractors, or the owner and the architect, as to responsibility for delays in the work. Owners are very much in the power of contractors and architects. To avoid the uncertainty of verbal disputes, and to prevent the contractors from making claims

for delay after the building has been finished, is clearly the purpose of such provisions. They are for the benefit of both, especially for the owner.    The plaintiff knew that it could have no claim for delay for any reason unless it made a claim in writing within twenty-four hours after its occurrence. If, relying on the assurance of the architect, it chose to go on with the work without placing itself within the protection of the contract, it must bear the consequences, unless we can say the architect had authority to waive this condition.

As we have already said, the purpose of this stipulation was to protect the defendants from stale claims for delay, which might be based upon oral understandings, and made when it might be difficult to prove the facts in relation thereto. The giving of the notice was a condition precedent to any authority on the part of the architect to act.    The latter was not a general agent of defendants.    He had only such authority as was given him under the contract.    Thus, in California an architect, without special authority conferred by the written contract, was not authorized to receive notice of an assignment of a building contract.    *Renton, H. & Co. v. Monnier,* 77 Cal. 449.    He has no power to bind the owner for extra work unless it is done as the contract prescribes.    *Baltimore C. Co. v. Coburn,* 7 Md. 202; *Stark-weather v. Goodman,* 48 Conn. 101.    See *Condon v. Jersey City,* 43 N. J. Law, 452; *Sutherland v. Morris,* 45 Hun, 259; *Fitzgerald v. Moran,* 141 N. Y. 419.    Where the contract provided that no claim for extra work should be allowed "unless the same should be done in pursuance of a written order from the engineer in charge, and the claim made at the first settlement after the work was executed," it was held that the engineer had no power to alter or change the contract, and no allowance for extra work could be made without proof of performance of the conditions precedent in the contract.    *Woodruff v. R. & P. R. Co.* 108 N. Y. 39.    In

*Thayer v. V. C. R. Co.* 24 Vt. 440, as between the company and their contractors, the contract seems to have expressly denied the power of the engineer to bind the company for extra work, except in a particular mode, in writing, and then the claim to be presented and adjusted in a prescribed time and mode. It was held there was nothing in the general duties of the engineer to authorize him to vary the contract and employ others to do such work. *Vanderwerker v. V. C. R. Co.* 27 Vt. 125, was a similar case, in which the court said:

"No one could for a moment be led into any misapprehension as to the extent of the engineer's authority to charge the company by varying the existing conditions or making new ones. The engineers were there for no such purpose, and they had no such agency, except under specific limitations and restrictions, and they did not, as to this item, assume to do any such thing."

See, also, *Vanderwerker v. V. C. R. Co.* 27 Vt. 130; *Lewis v. Slack*, 27 Mo. App. 119. In *Dodge v. McDonnell*, 14 Wis. 553, where one had employed an architect to make plans for a house and do such other acts as architects usually do as such, and had engaged a contractor to do the work and furnish the materials, and had placed money in the architect's hands to be paid on the contractor's order, it was held that this did not warrant a finding that the architect was the general agent of his employer, and he had no authority to bind him by new contracts for materials with other persons. See *Campbell v. Day*, 90 Ill. 363. In *Starkweather v. Goodman*, 48 Conn. 101, a builder made a written contract to furnish the materials and build a house for defendant according to definite plans and specifications and for a fixed sum, all the materials and work to be accepted by an architect named, who was to superintend the construction. The builder, under the direction of the architect, did certain work variant from, and in addition to, the specifications, which increased the cost and value of the house. Held that

the ordering of the work was beyond the scope of the architect's agency, and that the defendant was not liable to the builder for it. 1 Hudson, Building Cont. 14, says:

"An architect or engineer has no general authority to dispense with, waive, vary, or alter the conditions of a building contract. His duty is to see that it is faithfully fulfilled according to its terms; but it may be varied by the parties themselves, who are entitled to strict compliance therewith, or by the architect under special authority given him on that behalf."

This rule was applied in Canada in *Jones v. Reg.* 7 Can. Sup. Ct. 570, which contains a careful discussion of both the English and American decisions.

The decisions cited indicate the almost unvarying rule that, without express authority, the architect cannot waive important conditions in his employer's contract. The parties themselves have that power, and the courts have frequently recognized it. *Bannister v. Patty's Ex'rs,* 35 Wis. 215; *McPherson v. Rockwell,* 37 Wis. 159; *Boden v. Maher,* 105 Wis. 539, and *Wambold v. Gehring,* 109 Wis. 122,— are cases in this court. A proper construction of the contract makes the giving of the notice to the architect a condition precedent to the right of plaintiff to claim an extension of the time for the completion of the building. It was a condition the architect had no power to waive. There is no claim that the defendants have done anything to waive it.

It being admitted that the work was not finished within the time limited by the contract, the defendants were entitled to damages for the delay. The contract stipulated $50 per day as liquidated damages. We are unable to say from the evidence whether that sum is so disproportionate to the actual injury suffered as that it should be construed to be a mere penalty, or as damages fully liquidated. *Seeman v. Biemann,* 108 Wis. 365. The trial court seems to have treated it as liquidated damages and denied defendants the right of showing the rental value of the building, be-

cause that sum was stipulated in the contract. The discussion of this question in the case last above referred to renders it unnecessary at this time to further elaborate it. The uniform rule is that the circumstance that damages are stated in the written contract does not absolutely control the courts. If the sum so fixed is largely in excess of actual damages, they do not hesitate to pronounce it a penalty, and then proceed to grant such as are fair and reasonable under the circumstances. It is possible that on a new trial the defendants may be found entitled to damages for delay in completing the building. The court should therefore keep this principle in mind and permit only such recovery as is warranted by the facts, within the rule of the *Seeman Case.*

The jury found that plaintiff completed the building on November 27th, a delay of twelve days. The defendants claim a delay of thirty-two days. Plaintiff's testimony is quite inconclusive on the subject. The manager testified the building was completed on the day mentioned; yet there appears in the record a letter written by him on that day asking the architect for an estimate on account, in which he says:

" We figure that five hundred dollars will complete all the work left to do under our contract, and expect to get an estimate for the balance due, less that amount and the retainage."

These two statements do not harmonize. If there was yet work of the value of $500 to be done, it could not be well said that the building was finished. In view of the testimony of defendants that the building was not completed until some time afterwards, the finding of the jury as to date of completion had very little to rest upon. It was clearly against the evidence.

The evidence offered to impeach the certificate of the architect was not of the character demanded in this class of cases. In *Hudson v. McCartney,* 33 Wis. 331, this court laid

down the rule that such evidence must be of such a char-
acter as to show that the action of the architect was grossly
and palpably perverse, oppressive, and unjust.   Or, in other
words, to impeach the action of the architect, the evidence
must be clear and convincing and point with reasonable
certainty to mistake, fraud, or collusion.   The substance of
the evidence upon which the finding of the jury is based is
that the architect told Mr. Wagner that he, personally,
would not insist upon a deduction for delay, but that the
defendants had given him thirty-two days as the time the
finishing of the building was delayed, and insisted that he
must deduct that many days from the contract price; that
he expected to get more work from them and would have
to yield to their demands.   Such evidence does not show
collusion.   The defendants were merely insisting on their
legal rights.   It was not shown that they brought any pres-
sure to bear upon the architect, or used any undue influence
to control his action or judgment.   On the other side we
find absolute and positive denials of the witnesses' state-
ments, and assurances of the utmost good faith.   The evi-
dence as a whole is far from being clear, satisfactory, or
convincing.   Indeed, it can hardly be said to reach beyond
mere suspicion.

We see no error in the other assignments raised and dis-
cussed.

*By the Court.*— The judgment is reversed, and the cause
is remanded for a new trial.