16808

AUSTIN-GRIFFITH, INC. v. GOLDBERG *ET AL.*

(79 S. E. (2d) 447)

374

*Messrs. S. E. Rogers* and *Charles N. Plowden,* of Sum-
merton, *for Appellants,*

*Messrs. Berry & Berry* of Orangeburg, and *J. G. Din-
kins,* of Manning, *for Respondent,*

December 21, 1953.

OXNER, Justice.

This is a statutory proceeding to establish and foreclose two liens for labor and materials furnished by Austin-Griffith, Inc. in the erection of a building for Dorothy R. Goldberg and her husband, M. M. Goldberg.

On March 15, 1949, Austin-Griffith, Inc. entered into a contract with the Goldbergs, who then operated a tourist court in Clarendon County, near Summerton, to erect, according to certain plans and specifications, an additional building on the premises for $32,200.00. The contract price was to be paid in installments based on a certain percentage of the value of the labor and materials incorporated in the work and of the materials stored at the site, as estimated by the architect. Upon substantial completion of the entire work, the contractor was to receive a sum sufficient to increase the total payments to 90% of the contract price. The remaining 10% was to be paid upon a final certificate of the architect that the contract had been fully completed and the work was acceptable.

The job was to be completed on or before July 15, 1949, and the contractor agreed that for each day thereafter that the contract remained uncompleted, the owner could deduct and retain from the contract price as liquidated damages the sum of $50.00. It was further provided, "that if the completion of this contract is delayed by the owner, an act of God, or casualty beyond the control of the contractor then in such event, the time of completion of this contract shall be extended for such additional time as should be considered (caused) by such delay, provided, however, that the con-

tractor herein shall at the time of such delay, if any, demand of the owner in writing such additional time within which to complete the performance of this contract."

The provision as to alterations and extra work was as follows:

"The owner shall have the right at any time to make changes, additions, or omissions that he may desire and the same shall be executed by the contractor as a part of this contract, without impairing its validity, and the changes, and the value of the changes are to be agreed upon in writing to the architect and added or deducted from the contract price as the case may be.

"No claim for work will be allowed unless the same is ordered in writing by the owner through the architect, and the cost agreed upon, and stated in the order.

"No alteration shall be made in the work except upon written order of the architect, the amount to be paid by the owner or allowed by the contractor by virtue of such alteration to be stated in said order."

It was agreed that if the contractor neglected to supply sufficient materials or workmen or abandoned the contract, the owner could, after first giving three days' notice in writing by registered mail, provide the necessary materials and workmen to complete the job and charge the costs thereof to the contractor. The contractor further agreed to make good any defects arising from faulty materials or workmanship, which appeared within three months after the completion of the building.

Finally, it was stated that "should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the architect, whose decision shall be final and conclusive."

The other terms and conditions of the contract are not material to this controversy.

Construction was commenced immediately after the execution of the contract. During the progress of the work, the contract was twice amended. The first amendment, executed on May 26, 1949, provided that the owner, instead of the contractor, would furnish and install the heating system and certain window and door screens. The agreed value of these eliminations was $3,155.00, thereby reducing the contract price to $29,045.00. Under the second amendment, executed on August 24, 1949, the contractor was relieved of the responsibility of furnishing and installing the kitchen sink and cabinets, the agreed value of which was $250.00, thereby further reducing the contract price to $28,795.00.

During the course of construction, the sum of $18,519.18 was paid to the contractor. On July 15, 1949, the time fixed in the contract for completion of the building, the job was far from finished. Finally, on September 10, 1949, the contractor, claiming that the owners had breached the contract in several particulars, ceased work, and on September 20th filed two mechanics' liens against the premises, one for an alleged balance due on the contract, and the other for alleged extra work. On September 22, 1949, Goldberg notified the contractor by letter that unless work was resumed by September 28th, he would take over the job and finish the building, charging the costs thereof to the contractor. Work was not resumed and on October 4, 1949, Goldberg notified the contractor that the owners would proceed immediately to complete the building.

On February 16, 1950, this action was commenced for the foreclosure of the two mechanics' liens which had been filed. It was alleged in the contractor's petition that subsequent to the execution of the contract on March 15, 1949, from time to time the parties entered into oral agreements for work in addition to that stipulated in the contract; that all terms and conditions of the contract were duly performed by the contractor until September 10, 1949, when it was forced to discontinue construction because of the failure of

the owners (1) to make payments as provided by the contract, (2) to make selection of materials as they were required to do, and (3) to allow the workmen on the job to continue with construction in accordance with the agreements between the parties. It was further alleged that the contractor was entitled to a lien for $7,055.82, representing the balance due on the contract, and for the further sum of $4,763.25, representing extra work done at the request of the owners.

An answer was duly filed by the Goldbergs. They denied entering into any agreement for extra work and further denied any breach of contract on their part. They alleged that the contractor failed to construct the building in accordance with plans and specifications; that it finally abandoned the contract, necessitating the job being completed by the owners; and that on account of the unsatisfactory condition of the building when abandoned, due to failure to carry out specifications and faulty workmanship, it was worth no more than had been already paid on the contract. They then proceeded to set up by way of offset (1) a claim of $270.00 on account of the failure of the contractor to pay for certain sand used in the construction of the building; (2) a claim for liquidated damages in the sum of $4,900.00 for failure to complete the work within the time fixed by the contract; (3) expenses of $3,000.00 incurred in finishing the job; (4) a claim of damages in the sum of $10,000.00 because of decrease in the value of the building due to failure to follow plans and specifications and faulty workmanship; and (5) a claim for damages in the sum of $10,000.00 for loss of the use of the building resulting from the failure to complete it within the stipulated time, which delay, it was also claimed, resulted in the loss of the commitment for a loan which the owners had obtained.

The Bank of Summerton, which was made a party respondent along with the Goldbergs under an allegation that it claimed some interest in the premises, filed an answer al-

leging that it held two mortgages on the property executed by the Goldbergs, one in the sum of $10,000.00, dated March 26, 1949, and the other for $14,000.00, dated October 1, 1949. It asked that the priority of its liens be determined.

The contractor, in reply, entered a general denial to all the claims for offsets made by the Goldbergs.

The cause was referred to a member of the Sumter Bar as Special Referee. Three extended references were held and, by consent of the parties, the Referee viewed the building in controversy. In a well-considered report filed on August 11, 1951, he found (1) That the only extra work done by the contractor was completing the "breezeway", at a cost of $163.29. (The owners concede the correctness of this item and that credit therefor should be allowed the contractor); (2) that all other claims for extra work should be disallowed because (a) such work was included in the plans and specifications, and (b) there was no written request therefor as required by the contract; (3) that the contractor failed to erect the building according to the plans and specifications and without justification abandoned the contract; (4) that in numerous particulars the workmanship was faulty; (5) that the owners did not materially interfere with the work of the contractor but "were merely trying to insist that the erection be according to specifications, which were not followed"; and (6) that "until the statement of August 30, 1949, payments were satisfactorily made under the contract", and that the owners were justified in refusing to pay the statement rendered on August 30th and the subsequent demands made by the contractor.

By way of offset, the Referee allowed the owners the following credits: (1) $270.00 on account of the failure of the contractor to pay for certain sand which went into the building; (2) $749.15 expended by the owners in completing the job; (3) $1,550.00 representing a decrease in the value of the building brought about by a failure to follow specifications and by defective workmanship; (4) $4,900 as

liquidated damages for failure to complete the contract on
time; and (5) $894.40 for repairing a defect in the hot
water line which appeared in December, 1949, shortly after
the owners had completed the job. All other offsets claimed
by the owners were disallowed.

The Referee stated the account between the parties as
follows:

| | | |
|---|---:|---:|
| Amount due under original contract | | $ 32,200.00 |
| Plus balance due on breezeway .. | | 163.29 |
| | | $ 32,363.29 |
| Less Credits as follows: | | |
| By May amendment ........ $ | 3,155.00 | |
| By payments on contract ...... | 18,519.18 | |
| By sand furnished by Summerton Sand Company ........... | 270.00 | |
| By amount expended to complete | 749.15 | |
| By difference in value due to defective workmanship, etc. .... | 1,500.00 | |
| By repairs to water heater .... | 894.40 | |
| By liquidated damages for failure to complete contract on time, 98 days at $50.00 per day .... | 4,900.00 | $ 30,037.73 |
| | | $ 2,325.56 |

In fixing the priority of the liens, the Referee concluded
that the mortgage held by the Bank for $10,000.00, ex-
ecuted on March 26, 1949, constituted a first lien; that the
balance due the contractor of $2,325.56, together with in-
terest thereon from December 8, 1949, constituted a second
lien; and that the mortgage held by the bank in the sum of
$14,000.00, executed on October 1, 1949, constituted a third
lien on the premises.

The case was heard by the Resident Judge of the Third
Circuit on exceptions by the contractor to the report of the

Referee. In an order filed on July 1, 1952, he modified the findings and conclusions of the Referee in the following particulars:

(1) He allowed the owners a further credit of $250.00 on account of the amendment to the contract made on August 24, 1949, whereby the installation of the kitchen sink and cabinets was taken out of the contract and the contract price reduced by $250.00 (It is conceded that this credit is proper and the failure of the Referee to allow same was a mere oversight.) (2) He found that the sum of $894.40 allowed the owners by the Referee for repairing the hot water line was excessive and that this item should be reduced to $184.90. (3) He disallowed the item of $4,900.00 for liquidated damages on account of failure to complete the contract on time. The net result of these modifications was to change the balance due the contractor from $2,325.56, as found by the Referee, to $7,685.06. The Circuit Judge further modified the Referee's report by holding that the mechanic's lien of the contractor for $7,685.06 constituted a first lien on the premises and was prior to both mortgages held by the Bank of Summerton.

The Bank of Summerton has appealed from that portion of the order of the Circuit Judge holding that the contractor's lien was prior to the lien of its mortgage for $10,-000.00, dated March 26, 1949. The owners have appealed from the action of the Circuit Judge (1) in reducing the allowance for repairing the hot water line from $894.40 to $184.90, and (2) in disallowing the claim of $4,900.00 for liquidated damages on account of failure to complete the contract on time.

The appeal by the Bank of Summerton presents a moot question. After this action was commenced, the property was sold for an amount far in excess of the total amount of liens and it is conceded that there are ample funds on hand to pay all parties. We are, therefore, not concerned with the matter of priority of liens. The only question we are called

upon to determine is the correctness of the order of the Circuit Judge with respect to the two items above mentioned.

We shall first consider the question of a proper allowance for repairing the hot water line. Goldberg first testified that it cost him $184.90 to make these repairs. At a later reference he fixed the amount at $894.40, with no explanation of the discrepancy. When the person who made these repairs was on the stand, he was not asked as to the amount paid for this work, although he was a witness for the owners and could have definitely fixed the cost. Under the foregoing circumstances, we think the Circuit Judge was correct in allowing only $184.90. We also agree with him that this represents a more reasonable allowance.

We now turn to the major item in controversy—the amount of liquidated damages, if any, which should be allowed for failure to complete the job within the time fixed by the contract. The Referee allowed $4,900.00—98 days at $50.00 per day. Evidently this represents the period from July 15, 1949, the date fixed in the contract for completion of the work, to October 21, 1949, which Goldberg testified was the earliest date they were able to open any of the units in the building. In refusing to allow any amount for liquidated damages, the Circuit Judge concluded as a matter of fact that the owners, as well as the contractor, had breached the contract and thereby contributed to the delay in completion of the structure. He concluded as a matter of law that an owner is not entitled to recover liquidated damages where he fails on his part to duly keep and perform the covenants set forth in the contract or otherwise is the cause of the delay, and, further, that a provision for liquidated damages does not apply where the builder entirely abandons the contract and the control of completion of the work passes into the hands of another.

With reference to the breach of the contract by the contractor, the Circuit Judge states: "Apparently plaintiff started the 'fireworks' by laying out the building for con-

struction some three feet smaller than the plans required. Plaintiff then undertook to construct the same by placing the foundation thereunder much different from what was called for by the contract, and from then on plaintiff engaged in performing shoddy work and neglecting the particulars of the plans and specifications. It is not deemed necessary to enumerate in detail here such other omissions."

As to breach on the part of the owners, he found as a fact that they failed to make the payments within the time required by the contract, and further that they, without justification, seriously interfered with the work of the contractor, all of which contributed to the delay in the completion of the job.

From the foreging it appears that we have a concurrent finding of fact by the Referee and the Circuit Judge, which is supported by the overwhelming weight of the testimony, that the contractor failed to follow the specifications and that the workmanship was not up to the standard required. But the Referee and Circuit Judge disagreed as to whether there was a breach of the contract on the part of the owners. We think the preponderance of the evidence sustains the view of the Referee. The alleged interference by the owners arose from faulty construction and the failure of the contractor to follow the specifications. We think the Referee also correctly found that there was no default on the part of the owners in paying for the work. The contractor's own testimony shows that the payments were satisfactory until sometime around August, 1949. Mr. W. D. Austin, its vice-president, testified as follows:

"Q. Talking about delays, before you breached the contract, delays in payment? A. I think the delays in payment were on every payment before I reached the final payment.

"Q. Well, you continued that, you waived those, which payment was it you refused to do work on and considered it a breach of the contract? A. Not until I were finished.

"Q. And that was after your time for completing the building had expired, is that correct, September? A. Yes, sir, September, the time was out at that time.

"Q. Now, payments prior to the completion of the building had been acceptable to you? A. Yes, I think so."

The owners were justified in not making the payments requested by the contractor in August and September because at that time the contractor had not only breached the contract, but there had accrued a large amount of liquidated damages for failure to complete the work on schedule. As stated in *National Loan Exchange Bank of Greenwood v. Gustafson,* 157 S. C. 221, 154 S. E. 167, 171, "it would be manifestly inequitable to require the owner to pay the contract price to the contractor, after a breach of the contract by him, without first making itself whole for such damages as it has suffered by reason of the breach."

But assuming that the delay in completing the work was due in part to the fault of the owners, the contractor is foreclosed from making such claim because he made no demand in writing for an allowance on account of such delay. The contract provides that if completion is delayed by the owners, the time for performance shall be extended "for such additional time as should be considered (caused) by such delay, provided, however, that the contractor herein shall at the time of such delay, if any, demand of the owner in writing such additional time within which to complete the performance of this contract."

Such a provision is regarded by the courts as specifying a condition precedent to any right of the contractor to be excused for delay due to the fault of the owner, and where no demand for such extension of time is made, the contractor is not in a position to assert that the owner caused a delay in completion. *Plumley v. United States,* 226 U. S. 545, 33 S. Ct. 139, 57 L. Ed. 342; *Olson Construction Co. v. Commercial Building & Investment Co.,* 127 Neb. 609, 256

N. W. 22; *Chapman Decorative Co. v. Security Mut. L. Ins. Co.*, 3 Cir., 149 F. 189; *Wait v. Stanton*, 104 Ark. 9, 147 S. W. 446; *United States v. Cunningham*, 75 U. S. App D. C. 95, 125 F. (2d) 28; *Wm. P. Jungclaus Co. v. Ratti*, 67 Ind. App. 84, 118 N. E. 966; *Ward v. Haren*, 139 Mo. App. 8, 119 S. W. 446; *Feeney v. Bardsley*, 66 N. J. L. 239, 49 A. 443; *Curry v. Olmstead*, 26 R. I. 462, 59 A. 392; *J. G. Wagner Co. v. Cawker*, 112 Wis. 532, 88 N. W. 599.

These cases hold that a provision of this kind is a condition precedent, compliance with which must be shown, because it must be assumed that the parties in inserting such provision attached both value and importance to its precise terms. Where the contract stipulates that there must be written application or demand for extension of time, an oral demand is insufficient. *United States v. Cunningham, supra*, 125 F. (2d) 28. In *Chapman Decorative Co. v. Security Mut. L. Ins. Co., supra*, 149 F. 189, 191, the Court stated one of the purposes of such a provision as follows: "Its purpose evidently was to avoid just such a contest as the plaintiff here seeks to raise. In the absence of a claim for extension for delay, the defendant had a right to presume, either that no valid ground to ask an allowance existed; or, if it existed, it was not serious enough to call for an extension." In *J. G. Wagner Co. v. Cawker, supra*, 112 Wis. 532, 88 N. W. 599, 602, the Court said:

"The importance of this stipulation, as well as its purpose, is manifest. The very contest that has arisen in this case demonstrates the necessity of some such cautious provision. Disputes frequently arise between different contractors, or the owner and the architect, as to responsibility for delays in the work. Owners are very much in the power of contractors and architects. To avoid the uncertainty of verbal disputes, and *to prevent the contractors from making claims for delay after the building had been finished,* is clearly the purpose of such provisions. They are for the benefit of both, especially for the owner. The plaintiff knew that it could

have no claim for delay for any reason unless it made a claim in writing within 24 hours after its occurrence. * * * As we have already said, the purpose of this stipulation was to protect the defendants from stale claims for delay, which might be based upon oral understandings, and made when it might be difficult to prove the facts in relation thereto." (Italics ours.)

Not only is there no evidence in this case showing that the contractor ever made a written demand for extension of time to complete the job on account of delay brought about by the owners, but there is an absence of any evidence of an oral demand for such extension. Nor is there anything in the record tending to show waiver of this contract provision on the part of the owners. On the contrary, the attention of the contractor was repeatedly called to the fact that it would be held under the provision for liquidated damages. In the amendment to the contract made on August 24, 1949, there appears the following reservation: "It is understood this amendment in no way amends any other provision of the said contract, *including the provision as to penalties."* (Italics ours.)

Having reached the conclusion that the contractor cannot avoid liability for liquidated damages upon the ground that the delay in completion of the project was caused by the owners, we now turn to the remaining question of whether the contractor is relieved of liability for such damages upon the ground that he abandoned the contract and did not complete the job.

The contractor contends, and the Court below held, that where the owner elects to take possession of and to complete the work himself, as authorized by the contract, the clause providing for liquidated damages does not apply. There are some authorities, particularly the older cases, so holding. See 9 C. J., Building & Construction Contracts, Section 136, 12 C. J. S., Building and Loan Associations, § 106. This is also the view expressed in Williston on Contracts, Revised

Edition, Volume 3, Section 785, where it is stated that a provision of this kind "is construed as applying only to delayed, not to abandoned, performance." This was the position advanced by Mr. Justice Cothran in a dissenting opinion in *National Loan & Exchange Bank of Greenwood v. Gustafson, supra,* 157 S. C. 221, 154 S. E. 167. But a majority of the Court held otherwise where the contractor abandoned the job after the day fixed in the contract for completion. In that case the contractor agreed to complete the erection of a school building on or before May 23, 1926, and there was a provision fixing liquidated damages of $30.00 per day for delayed performance. The contractor abandoned the work during the latter part of August and the school district took possession on September 1, 1926, and completed the construction of the building the following December. The contractor and his surety contended that in no event could liquidated damages be allowed beyond September 1, 1926, when the school district took possession. The Court stated that conceding, without deciding, that the clause for liquidated damages did not attach for delay *eo nomine* beyond September 1, 1926, such clause did fix a proper measure of the damages suffered during the entire period that the building was under construction. Liquidated damages on this basis were allowed from May 23, 1926, the time fixed in the contract for the completion of the building, to December, 1926, when the building was completed by the school district.

The contention now advanced by the contractor is not only contrary to the view taken by this Court in the foregoing case, but is not supported by the weight of authority elsewhere. In *Southern Pacific Co. v. Globe Indemnity Co.,* 2 Cir., 21 F. (2d) 288, 291, the Court said:

"It is urged that a liquidated damage clause does not apply when work under the contract is abandoned by the contractor. *Murphy v. U. S. Fidelity & Guaranty Co.,* 100 App. Div. 93, 91 N. Y. S. 582, affirmed 184 N. Y. 543, 76 N. E. 1101, and *Village of Canton v. Globe Indemnity*

*Co.,* 201 App. Div. 820, 195 N. Y. S. 445, are cited as authorities to this effect, and a similar statement may be found in Williston, Contracts, § 785. A close examination of the cases, however, does not in our opinion establish such a rule, and we can see no justification for it, at least when the contractor abandons after the time for completion has passed. In such a case some part of the liquidated damages has accrued before the repudiation. No intelligible reason has been suggested why the owner should lose his right to them because of subsequent repudiation."

In *Six Companies of California v. Joint Highway District No. 13 of California,* 9 Cir., 110 F. (2d) 620, 625, the Court cites, among other authorities, our case of *National Loan & Exchange Bank of Greenwood v. Gustafson, supra,* in support of the following statement:

"Appellants contend that the clause does not apply to the delay in completion after abandonment by the Contractor. * * * Fairly construed, it means that the period for which the damages are to be computed comprises the time between the agreed date of completion of the 'work' and its actual completion, whether by the Contractor or by the District. It is not for delay in completion of the contract but for delay in the completion of the work that the damages are provided. The clause does not in terms or by implication empower the Contractor to put an end to the accrual of the liquidated damages by the mere process of refusing to go ahead after the time for completion has passed."

It should be added that the above case was reversed by the United States Supreme Court upon the ground that the question involved was governed by a California decision holding that a building contract clause for liquidated damages in case of delay in completion was inapplicable to delay after contractor's abandonment of work. *Six Companies of California v. Joint Highway District No. 13 of California,* 311 U. S. 180, 61 S. Ct. 186, 85 L. Ed. 114. The Court of Appeals concluded that the California case was wrongly

decided, but the Supreme Court of the United States held that the law of California, whether sound or unsound, should have been followed.

We are not called upon to determine whether a provision for liquidated damages is applicable where the contractor abandons his work prior to the date fixed in the contract for completion, and are not to be understood as intimating any opinion thereabout. Following the rule announced in *National Loan & Exchange Bank of Greenwood v. Gustafson, supra,* and the better reasoned cases elsewhere, we hold that where the contractor abandons the work after the time fixed for completion, the clause providing for liquidating damages applies from the time fixed for completion until the work is abandoned, and for a further period of time reasonably necessary to complete the job. Of course, the owner may not increase his recovery either by unreasonable delay in taking over the job, or by failing to complete it with diligence and dispatch. *School District No. 3 of Ford County v. U. S. Fidelity & Guaranty Co.,* 96 Kan. 499, 152 P. 668.

In the instant case the owners did not know until the latter part of September, 1949, that the contractor would not resume the work. They promptly took possession on October 4th and proceeded to complete the job. Some of the units in the building were ready for occupancy on October 21, 1949, although the job was not fully completed at that time. There is no contention by the contractor that there was any unreasonable delay by the owner in taking over the job and proceeding with the work, nor is there any evidence to that effect. Under these circumstances, we think the Referee properly allowed liquidated damages from July 15, 1949 to October 21, 1949, or a period of 98 days, at $50.00 a day, amounting to $4,900.00 (no question is raised as to the reasonableness of the $50.00 per day provision).

In conclusion, it should be stated that on the disputed issues of fact arising in this case, either party had the right to a jury trial. *Stone & Clamp v. Holmes,* 217 S. C. 203, 60 S. E. (2d) 231. However, no such right was asserted and by consent of the parties the case was referred as if it were one in equity. We have, therefore, determined the facts in accordance with our view of the preponderance of the evidence. *Little v. Little,* 215 S. C. 52, 53 S. E. (2d) 884.

The order of the Circuit Court is modified by allowing the owners a further credit for liquidated damages in the sum of $4,900.00, thereby making the balance due the contractor $2,785.06, which amount will bear interest as fixed in the Circuit decree.

Except as thus modified, the circuit decree is affirmed.

BAKER, C. J., STUKES and TAYLOR, JJ., and JAMES M. BRAILSFORD, JR., Acting Associate Justice, concur.