**BLOOMFIELD REORGANIZED SCHOOL DISTRICT NO. R-14, STODDARD COUNTY, Missouri, Plaintiff (Respondent),**

v.

**E. M. STITES, Defendant (Appellant).**

No. 47666.

Supreme Court of Missouri,

Division No. 2.

May 9, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied June 13, 1960.

James A. Finch, Jr., Finch, Finch & Knehans, Cape Girardeau, John Hall Dalton, Dalton & Treasure, Kennett, for appellant.

Briney & Welborn, Bloomfield, for respondent.

BARRETT, Commissioner.

In 1955 the appellant, E. M. Stites, and the respondent, Reorganized School District R-6 of Stoddard County, entered into a contract in which Stites agreed to construct a combination gymnasium-music building in Bloomfield for the price of $276,247. In June 1957 the school district terminated the contract and instituted this suit for possession of the building. In response to the suit the contractor denied that the district was then entitled to possession of the building and filed a counterclaim for the balance of $19,788.35 due on the contract price, $1,798.64 for extras, and $20,000 damages for extra costs allegedly due to delays caused by the district and the architect, Charles W. Lorenz. In a reply the school district asked for $25,000 damages for ten specific items of allegedly faulty work in violation of the terms of the contract. On November 22, 1957, the parties entered into a stipulation in which it was agreed that the district could "enter and commence use" of the building and to "minimize damages" it was agreed that a third party would "repair and re-roof the main roof" at a cost of $4,334 to be paid from sums retained by the district under Article 4 of the contract. Thus, despite their mutual distrust, suspicion and obstinacy, these matters have been eliminated as appealable issues and will not be mentioned except as they materially bear upon other problems. And, to keep this opinion within reasonable bounds, the evidence and innumerable exhibits will not be set forth in detail and sifted for all the permissible inferences; these will be employed only so far as necessary to illustrate the essential and determinative issues.

In substance the trial court found that the district was entitled to the possession of the building as of July 24, 1957, that Stites had breached the contract in that he had failed to complete the building within the time provided in the contract and therefore the district was entitled to $7,000 liquidated damages. On the other hand, the court found that Stites was entitled to $1,798.68 for extra work and under the terms of the contract was "entitled to 95% of the contract price," subject to the amount of the liquidated damages and the price of the roof. Computing all these items, to the district the amount of the liquidated damages and the price of the roof, $11,344, and due Stites under the contract and for extras, $12,118.68, the court allowed Stites the difference of $774.68, and he has appealed from the judgment.

■ One issue with some bearing on several matters is the effective date of the contract. The contract provided that the building was to be "substantially completed" in 395 calendar days; it is dated August 8, 1955, and so the district contends that the contract period elapsed and that liquidated damages accrued from and after September 6, 1956. The contract, however, was mailed to Stites by the architect on August 17, 1955, it was signed by Stites and then delivered by him to the school superintendent for execution by the board. The superintendent mailed the executed contracts to the architect in St. Louis September 14 and on September 21 the architect mailed an executed copy to Stites who received it on either September 22 or 23. The superintendent in transmitting the contracts admonished the architect, Lorenz, to not deliver the contracts until Stites delivered his "performance bond," and although Stites delayed sending his bond and certificate of insurance he wrote Lorenz on September 15 asking for a "proceed order." In sending a copy of the contract Lorenz wrote Stites two letters on the same day, the second one correcting his first statement that the 395 calendar days would run from September 21, 1955. On his part Stites ordered 9000 bags of cement for the Bloomfield school, August 15, 1955, but did not actually start the initial work of grading and hauling dirt until October 3, 1955. In these circumstances Stites argues that the

contract was not "operative" until September 22 or 23 when as he says "the last act necessary for its completion was performed." 1 Restatement, Contracts, Sec. 74.

The chief difficulty with his position is that all these matters are outside the contract terms; this contract does not contain a provision for a "work order," and its date was not left blank to be filled in upon signing. When signed by the parties this contract unambiguously said, "This Agreement made the *eighth* day of *August* in the year Nineteen Hundred and *fifty-five*" (the italicized words being typed into the contract) and there was then no objection to the date or suggestion that it be changed. Furthermore, in Article 2 it was provided that the work to be performed under the contract "shall be commenced *immediately*" and "shall be substantially completed *in three hundred and ninety-five calendar days*." In these circumstances, the parties having elected that their mutual rights and obligations are to be determined according to the letter of the contract, its effective date was August 8, 1955. "It is of first importance that a contract shall have definitely ascertainable dates of commencement and termination. To that end, those dates should be determinable from the recitations in the contract itself; there should be no room for conjecture or speculation. If, however, the intent of the parties becomes material, it should be gathered from the language of the contract and resort to extraneous facts is justified only if the contract itself creates a patent ambiguity, * * * Obedient to that rule, the courts have generally construed contracts to run from the date they bear and not from the date of delivery." Greer v. Stanolind Oil & Gas Co., 10 Cir., 200 F.2d 920, 922.

■ One of the substantial, controverted issues upon this appeal is "liquidated damages." Article 2, after providing that the work was to be commenced immediately and substantially completed in 395 days, that the date of beginning, rate of progress

and time for completion were "essential conditions" also contained this provision which was also typed into the printed form: "If the said Contractor shall neglect, fail or refuse to complete the work within the time herein specified, then the said Contractor does hereby agree, as a part consideration of the awarding of this contract, to pay to the Owner the sum of $50.00, not as a penalty but as liquidated damages for such breach of contract as hereinafter set forth for each and every calendar day that the Contractor shall be in default after the time stipulated in the Contract for completing the work, not including Sundays." As indicated, the effective date of the contract was August 8, 1955, and its completion date September 8, 1956. 685 days later, June 24, 1957, 290 days beyond the promised completion date, "the work," admittedly, was not "complete." Pursuant to the quoted provision of the contract and beginning with the contractor's estimates submitted after September 8, 1956, the school board deducted $50 a day from its payments to Stites, withholding as liquidated damages, according to the court, the sum of $10,300. In this connection the court found, without explanation, that the contractor was liable to the district for liquidated damages in the sum of $7000 although the contract according to these figures was 290 days in default. But the district has not appealed and unless for some reason the contractor is entitled to a reduction in that item or unless the contract provision is invalid the sum found due by the court has finally determined the matter.

The contractor contends that the contract provision is not one for liquidated damages as the contract recites but instead is a penalty provision and therefore invalid. If the provision is valid the contractor contends that the school district finally elected to terminate the contract and therefore could not also pursue the remedy of collecting liquidated damages. It is his position, furthermore, that any delays in completion of the work were "excusable" delays under

the contract or were delays caused and brought about by the district or its architect, Lorenz, and therefore he is entitled to credit on the liquidated damages claim for the excusable delays, which, according to him, is the entire period.

■ Again, it is not proposed and it is not necessary to a determination of this appeal to consider each of these claims in detail and illustrate from the record or to carefully examine the rationale of the applicable rules. And upon this particular issue, wrongful termination of the contract is put aside for the time being. Moore v. Board of Regents, 215 Mo. 705, 115 S.W. 6; Austin-Griffith, Inc. v. Goldberg, 224 S.C. 372, 79 S.E.2d 447, 42 A.L.R.2d 1123. And while there has been thoughtful criticism of the doctrine that liquidated damages may not be "apportioned" (Gillioz v. State Highway Commission, 348 Mo. 211, 224, 153 S.W.2d 18, 25–26; United States v. Kanter, 8 Cir., 137 F.2d 828), it is not necessary to a disposition of this appeal to examine and consider that problem. But see annotation 152 A.L.R. 1349, 1376–1378; 17 C.J.S. Contracts §§ 502, 504, pp. 1051, 1069; 9 Am.Jur., Secs. 49–50, p. 37. These two matters aside, in this particular contract between these particular parties and in the circumstances of this case, the liquidated damage provision is valid and enforceable and the amount provided is not unreasonably disproportionate to the "actual injury suffered." Thompson v. St. Charles County, 227 Mo. 220, 126 S.W. 1044, and compare Ward v. Haren, 139 Mo.App. 8, 119 S.W. 446, and Christopher & Simpson Architectural Iron & Foundry Co. v. E. A. Steininger Const. Co., 200 Mo.App. 33, 205 S.W. 278. And also in this connection, the district's claim and assertion of liquidated damages as of September 8, 1956, under Article 2 of the contract did not constitute an election of remedies and prevent the district's termination of the contract 290 days later. East Arkansas Lumber Co. v. Swink, 128 Ark. 240, 194 S.W. 5. Upon this subject Article 18 of the specifications provides that "This article does not exclude the recovery of damages for delay by either party under other provisions in the contract documents."

Mr. Stites testified that there were delays due to a cement and steel shortage and to the weather, over which neither party had any control. He claimed that there were numerous delays attributable to the misconduct of the architect: denial of permission to fabricate his own steel, delay in approving various shop drawings, delay in furnishing a paint schedule, delay in supplying information as to light fixtures, refusal to answer inquries as to two stairways and, in short, just about every item in the plans and specifications. Some of these matters for which Stites claims credit were not specifically covered by the contract (Cochran v. People's Railway Co., 131 Mo. 607, 33 S.W. 177), the architect was not obligated under the contract to furnish some of the information and as to some of the items the architect was inexcusably dilatory and some of the matters were not a substantial cause of failure to complete within the specified time. Gillioz v. Missouri State Highway Commission, supra. On the other hand, Mr. Stites was often exasperatingly dilatory and his testimony as to several matters is not too convincing. One item over which there was the greatest controversy was whether Stites could fabricate his own steel, particularly for the most important structural part of the building, the steel trusses. The matter was not specifically covered in the contract, Mr. Lorenz first denied and then granted permission subject to certain conditions. Mr. Stites was most uncooperative as to the conditions but in the end the fabrication in process was inspected by professional testers, the trusses were likewise inspected and their installation was entirely satisfactory and so this one item illustrates the useless bickering and waste of time. N. P. Pratt Laboratory v. Buffalo Forge Co., 2 Cir., 184 F. 287.

■ Also typed into Article 2 of the contract, however, was this sentence: "Ex-

tensions of time will be granted for delays beyond the control of the Contractor." Stites seizes upon this sentence and urges that extensions of time for these various delays, especially those beyond his control, were automatic and excused his own delicts and prevented the application of the liquidated damages provision. In so arguing he again contends that the typewritten sentence prevails over all other provisions, particularly over Article 18. But Article 18 of the general plans and specifications plainly covers the subject of delays and extensions, particularly delays "beyond the Contractor's control" or due to the "neglect of the Owner or the Architect." In a separate paragraph this article plainly states that "No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect. In the case of a continuing cause of delay, only one claim is necessary." As with liquidated damages and election of remedies, there is no irreconcilable conflict in Article 2 of the contract and Article 18 of the specifications, and they are to be construed together with respect to delays and extensions of time as well as with respect to other relevant subjects. 9 Am.Jur., Sec. 7, p. 8; Kennedy v. Bowling, 319 Mo. 401, 413, 4 S.W.2d 438, 443. From their mere recitation it is obvious that the several claims of delay were not "continuing" in character and Mr. Stites, admittedly, made no attempt to comply with this contract provision. On September 27, 1956, nineteen days after the agreed completion date, he did write the school board a letter in which he asked for an extension of 120 days stating that there had been delays beyond his control consisting in the delivery of cement from August 15, 1955, to November 14, 1955; "indefinite delivery of steel," 45 days delay in progress in January and February due to cold weather, and delay of door frames and hardware,—he said that "some of the hardware has not been delivered yet." All of these listed delays had occurred in the past, not "seven days before claim therefor is made," and they extended far beyond 120 days both before and after the request. There was no reply to this letter and there was no other request for an extension of time and the architect did not grant an extension. While the contractual provision, Article 18, may have been intended for the contractor's benefit, he did not comply with it and he is therefore not to be excused for the delays. Ward v. Haren, supra; Hiller v. Daman, 183 Mo.App. 315, 166 S.W. 869; Austin-Griffith, Inc. v. Goldberg, supra; annotation 152 A.L.R. 1349, 1378–1382.

■ The other meritorious issue concerns one phase of Mr. Stites' counterclaim —his right to recover the balance due on the contract. As indicated, the building was far from complete on September 8, 1956, the promised completion date, but the district did not then attempt to terminate the contract—instead it started deducting liquidated damages of $50 a day from the estimates and Mr. Stites continued with the construction of the building. Article 4 of the contract provides that the school district, the owner, shall make payments on the contractor's estimates of "90% per cent of the value" and *"upon substantial completion of the entire work"* 95% of the contract price and, by Article 5, that "Final payment shall be due 30 days after *substantial completion* of the work provided the work be then fully completed and the contract fully performed." (Italics supplied.) If this record is correctly understood the district in addition to deducting the liquidated damages also withheld ten per cent of the estimates under these provisions and finally five per cent. In any event, in May 1957 Mr. Stites submitted estimate No. 18 and on May 20, 1957, Mr. Lorenz, the architect, wrote the board a letter enclosing the estimate stating, "I am approving the amount of $22,407.15 representing the difference between 95% of the contract price and amounts authorized for payment previously." It is not necessary to detail all the intervening circumstances

but as of May 21, 1957, the architect certified to the board that the building was "substantially complete." Thereafter Mr. Stites was demanding a "punch list" (a list of items necessary to completely finish the building) from the architect and payment of what he called "delinquent" payments due since August 1956. The punch list was not furnished and Mr. Stites threatened, if the delinquent payments were not forthcoming, that he would not buy any further materials or pay for any more labor "on this project." The climax of all this was that on June 24, 1957, the architect, under Article 22 of the contract, certified to the board "that sufficient cause exists to justify your termination of employment of said contractor." He cited four particular reasons in justification of his certificate; (1) that the contractor has persistently and repeatedly refused and failed to supply enough properly skilled workmen and materials to perform the contract, (2) failure to complete the contract within the specified time, (3) that the contractor on many occasions had disregarded the instructions of the architect and (4) that the contractor had failed to make prompt payments to material suppliers. Thereafter, on June 25, 1957, the school district adopted a resolution terminating the contract and immediately instituted this litigation.

It is not necessary to comment in detail on the reasons the architect gave in his certificate, some of them were valid and some were not, and neither is it necessary to examine the board's resolution and the reasons it gave. As of September 21, 1957, the architect compiled a list of items (a punch list) necessary to finally complete the building in accordance with the plans and specifications. Aside from the defective roof (eliminated by the stipulation of the parties) the larger of this long list of items was "5 doors missing," replacing certain other doors with doors of another type wood, painting in places, grouting certain windows and numerous other small items. The district was entitled to a completed building, including these items, and

the list establishes that the building was not complete. Nevertheless the architect had certified, as the contract contemplated, that there was "substantial completion" of the building. And, although the district had terminated the contract and had possession of the building, there was no proof, even on the date of trial, July 22, 1958, of what it would cost to replace or furnish a single one of the items on the punch list; there was not even proof that any of them had been supplied. The school superintendent, who had contributed to the mistrust and bickering, was asked what financial loss there had been by reason of the district's not having possession of the building in 1956 and 1957 and this, of necessity, was his answer: "There may have been a little, but I think it would have been negligent (negligible). The only difference it could have been would have been the difference in the gate receipts in the new building and gate receipts in the old building, in dollars and cents."

Mr. Stites did not complete the building as he promised but he did not voluntarily abandon the work and the contract, despite his threatening letter, and by the standards of the contract and the architect there was "substantial completion." The result is that the district has the building "substantially completed" and has been using it, and it also has some part of the contract price plus the liquidated damages and the contractor has not been paid for his belated substantial performance. N. P. Pratt Laboratory v. Buffalo Forge Co., 184 F. loc. cit. 289. It is not necessary to consider whether there was a waiver on the part of the district, or an estoppel or acquiescence or numerous other matters; despite his failure to complete the building by September 8, 1956, the district permitted the contractor to continue, presumably under the contract, for 290 days to admitted "substantial completion" of the building and for that he is entitled to be paid the contract price less whatever sum is in fact necessary to remedy the defects and make the finished building conform to the plans and

specifications. Talbot-Quevereaux Const. Co. v. Tandy, Mo.App., 260 S.W.2d 314; Cross v. Robinson, Mo.App., 281 S.W.2d 22; Nees v. Weaver, 222 Wis. 492, 269 N. W. 266, 107 A.L.R. 1405; 17 C.J.S. Contracts § 509, p. 1087.

■ The second phase of the contractor's counterclaim is a claim for $20,000 damages for failure to furnish the punch list, delays resulting in losses consisting of items of general overhead in the operation of the business, the rental of equipment, paying foremen and crews and numerous other items causing additional expense and totaling $3,213 a month. Mr. Stites had several other jobs and while he attributes all this expense to this particular job even after "substantial completion" his testimony on this phase of his claim is not too persuasive and for the most part is an unsupported estimate and conclusion and upon this record he is not entitled to recover these items. Samuel Kraus Co. v. Kansas City, Mo., 315 S.W.2d 758, 764.

This controversy was tried without a jury and this court has reviewed "the case upon both the law and the evidence as in suits of an equitable nature" (V.A.M.S. § 510.310, subd. 4; Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783), but in the state of this record it is not possible to confidently direct the entry of a judgment for the sums precisely due each of the parties. As indicated, the district is entitled to retain the liquidated damages allowed by the court, $7,000, and it is entitled to the credit, if paid, of $4,334 for the roof. Mr. Stites is entitled to $1,798.68 for the extra work and he is entitled to recover the balance due on the contract price less whatever sum has in fact been expended to finally complete the building. Since these figures and computations do not plainly appear and are within the certain knowledge of the parties the judgment is reversed and remanded to the end that perhaps the parties may amicably compute these sums and if not that the court may enter a judgment in conformity with this opinion.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and ELMO B. HUNTER, Special Judge, concur.